# GABRIELLI LEVITT LLP

2426 EASTCHESTER ROAD • SUITE 201 • BRONX, NEW YORK 10469
PHONE (718) 708-5322 • FAX (718) 708-5966
E-MAIL: michael@gabriellilaw.com. • WWW: www.gabriellilaw.com

February 4, 2025

**VIA ELECTRONIC FILING**

Hon. Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

> **Re:** ***Rodriguez v. Sazerac Company, Inc. d/b/a Stirrings***
> ***Case No. 2:24-cv-08206-RER-ST***

Dear Judge Reyes:

This office represents the Plaintiff in connection with the above-referenced matter. I write in response to the Defendant's letter (the "pre-motion letter") requesting a pre-motion conference in connection with its planned motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

By way of background, our client is alleging that Sazerac Company, Inc. d/b/a Stirrings ("Sazerac"), has violated and continues to violate New York General Business Law ("GBL") §§ 349 and 350, and other laws, including, but not limited to, state express and implied warranty and unjust enrichment laws, by misleading consumers about the nature of certain cocktail mixers (the "Products" or "Product"[1]) that are sold under the "Stirrings" brand name with representations that the products contain "No Preservatives."

More specifically, Sazerac is engaging in false, deceptive and misleading acts and practices because the Products contain citric acid, a well-established preservative. To support this claim, Plaintiff has provided detailed allegations, including that the Food and Drug Administration ("FDA") has described citric acid as a preservative, that the FDA has sent warning letters that suggest that citric acid is a preservative and, as will be discussed in further detail below, intends to provide an expert declaration explaining how citric acid acts as a preservative in food and beverages.

Nonetheless, Defendant has advised the Court that it intends to move to dismiss, alleging that (i) the citric acid in its Products is only used as "a flavoring agent," (ii) Plaintiff's Complaint "lacks any factual content that could establish facial plausibility," (iii) Plaintiff's Complaint "offers no factual content" to support the assertion that the citric acid in the Products acts as a preservative, (iv) FDA

---

[1] The Products include, but are not limited to, Stirrings Margarita Cocktail Mix, Stirrings Old Fashioned Mix, Stirrings 5 Calorie Margarita Mix, Stirrings Paloma Mix, Stirrings Blood Orange Cocktail Mix, Stirrings Peach Bellini Mix, Stirrings Cosmopolitan Mix, Stirrings Apple Cocktail Mix, Stirrings Lemon Drop Cocktail Mix, Stirrings Bloody Mary Mix, Stirrings Pomegranate Cocktail Mix, Stirrings Sour Mix, Stirrings Mule Mix, Stirrings Mai Tai Mix, and Stirrings 5 Calorie Cosmopolitan Mix. Discovery may demonstrate that additional Stirrings products are within the scope of our client's Complaint.

warning letters are mere "informal communications" and are not binding, (v) FDA regulations do not imply that citric acid is a preservative, and (vi) that a reasonable consumer would not understand that a "small amount" of citric acid to be inconsistent with a "no preservatives" representation on the Products' label.

With respect to the FDA, the agency defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."[2]

More particularly, and in direct contrast to Defendant's assertion that "FDA regulations do not imply that citric acid is a preservative," the FDA specifically classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, and provides examples of how citric acid is used as preservatives in beverages.[3] For instance, under the "What They Do" table heading, the FDA states that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness.[4]

The FDA's view of citric acid functioning as an artificial preservative is further bolstered by several Warning Letters that it has sent to various manufacturers, including one sent to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives . . . *citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphases added)."[5]

Citric acid functions in beverages as a preservative by serving as an acidulant and as an indirect antioxidant. Citric acid infiltrates and weakens or kills microorganisms through direct antimicrobial effect, lowering a juice product's pH level, thereby combatting and sequestering microorganisms. Citric acid serves these functions regardless of whether it is being added as a flavoring agent.[6]

In an attempt to blur this well-recognized fact, food and beverage manufacturers, such as Defendant, have argued that the citric acid that they utilize does not have any preservative effect in the Products, i.e. that it is only used as a flavor enhancer. One manufacturer, in a matter previously handled by this office, even argued that citric acid did not function as a preservative in its products because it did not intend for it to do so.[7]

---

[2] 21 C.F.R. §101.22(a)(5).

[3] *See*, Overview of Food Ingredients, Additives, and Colors, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors- %28PDF%29.pdf.

[4] Id.

[5] FDA, Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated (Oct. 6, 2010), available at https://wayback.archiveit.org/7993/20170112194314/http://www.fda.gov/ICECI/Enf orcementActions/WarningLetters/2010/ucm228663.htm.

[6] Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." Principles of food chemistry. AVI Publishing Co., Inc., 1999, p. 438.

[7] *See, e.g.*, Mason v. Reed's, Inc., 515 F. Supp. 3d 135 (S.D.N.Y. 2021).

However, as per Dr. Marc Meyers, a food scientist that has been retained by our client herein, while food manufacturers may employ citric acid for a variety of purposes, including flavoring, citric acid still functions as a preservative in their products irrespective of these purposes.[8] In other words, a manufacturer's subjective intent for including citric acid in a product has no bearing on function, which is a matter of scientific fact, not human purposes. To put it plainly, subjective intentions cannot alter the laws of chemistry. Nor is there any reason to think that a reasonable consumer would care about a manufacturer's subjective intent, since this does not affect the physiological effects of preservatives. In fact, it is well settled that citric acid has dual effects physiologically which cannot be altered by one's subjective intent in using it:

> *A manufactured form of citric acid is commonly used as an additive in food . . . However, this manufactured form differs from what's found* naturally *in citrus fruits . . . The citric acid listed in the ingredients of foods and supplements is* manufactured — not what's naturally found *in citrus fruits. This is because producing this additive from citrus fruits is too expensive and the demand far exceeds the supply . . . Because of its acidic, sour-tasting nature, citric acid is predominantly used as a flavoring **AND** preserving agent — especially in soft drinks and candies.[9] (emphasis added).[10]*

As alluded to previously, Dr. Meyers intends to submit a similar declaration with respect to the Products at issue, wherein he will opine that even if citric acid could be used as a flavoring agent in the Products, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Products because citric acid acts as a preservative even if very low levels are contained in the Products. As such, Dr. Meyers will opine that the quantity of citric acid needed to affect the flavor of the Products is more than sufficient to function as a preservative. Accordingly, even if Defendant's purported intent to use citric acid was for flavoring, this would have no bearing on the actual function of citric acid as a preservative.

With respect to the "plausibility" of Plaintiff's claims, and the interpretations of a reasonable consumer, it should likewise be noted that there exists a plethora of cases that have already addressed these issues in the context of "no preservatives" statements and the inclusion of citric acid in food/beverage products.

For instance, in <u>Mason</u>, *supra*, the Plaintiff alleged that the defendant's "no preservatives" labeling were materially misleading because they were false (i.e., the products contained citric acid, a preservative) and likely to mislead a reasonable consumer acting reasonably. The defendant, on the other hand, argued that (i) plaintiff could not state plausibly that defendant violated sections 349 and 350 of the New York General Business Law, and (ii) that the citric acid used in its products did not function as a preservative but, instead, as a flavoring agent. The Court held that:

---

[8] *Id*. Dr. Marc Meyers previously provided a Declaration in the *Mason* litigation, wherein he stated citric acid functioned as a preservative in the Defendant's drink products by acting as a pH-reducer, antioxidant, and antimicrobial agent.

[9] https://www.healthline.com/nutrition/citric-acid#what-it-is.

[10] This conclusion is buttressed by the fact that citric acid can function as a preservative even when it is used only in trace amounts. *See*, Doores, S., 1993. Organic acids. In: Davidson, P.M., et al. (Eds.), Antimicrobials in Food CRC Press, pp. 95-136. http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf.

"The defendant argues that the citric acid in the defendant's products does not "tend[ ] to prevent or retard deterioration" of the products because it is used as a flavoring agent as opposed to as a preservative. The defendant argues that because the citric acid is not acting as a preservative, the labeling is protected by the safe harbor provisions. The defendant cites to an FDA warning letter that states that if citric acid is functioning as a preservative, the product must disclose that it contains preservatives. The defendant mistakenly infers that the inverse must also be true, namely that if a product contains citric acid not functioning as a preservative that it need not disclose that it contains preservatives. However, there is no basis to find that the safe harbor provisions would apply where citric acid, although a preservative, was being used only as a flavoring agent. In support of its argument, the defendant states that the plaintiff failed to allege that the defendant intended the citric acid in its products to act as a preservative and the defendant contends that citric acid actually functions as a flavoring agent in its products. But whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer. The plaintiff alleges in some detail that citric acid is a preservative and acts as a preservative in the defendant's products. In his declaration, Dr. Meyers asserts that citric acid is a preservative and can act as one in the defendant's products. See SAC Ex C. Moreover, the FDA lists citric acid as a preservative on its website. And several courts have concluded that, at least at the motion to dismiss stage, it would be improper to conclude that citric acid is not a preservative. See, e.g., Ashour, 2020 WL 5603382, at *3 ; Quiroz, 2019 WL 1473088, at *8 ; Hu, 2017 WL 11551822, at *1 n.4. Accordingly, it is at least ambiguous whether citric acid can be considered a preservative in the defendant's products. Therefore, it cannot be concluded on a motion to dismiss that the defendant complied with the safe harbor provisions."

In Kelly v. Beliv LLC, 640 F. Supp. 3d 286 (S.D.N.Y. 2022), plaintiff alleged that defendant's juice-based beverage, which was represented as containing "No Preservatives," was materially misleading because the product contained citric acid as an ingredient. With respect to the defendant's motion to dismiss, the Court held:

"Plaintiff plausibly alleges that a reasonable consumer may be misled by Defendant's labeling of the Product with the phrase 'No Preservatives.' Contrary to Defendant's contention, the word 'preservative' does not appear only to refer to an ingredient that 'actually function[s]' in a specific product to preserve a given product. Dkt. No. 24 at 9. Instead, the term 'preservative' appears to have two possible meanings: First, it denotes an ingredient that actually functions to preserve a specific product. Alternatively, and as relevant here, it may denote an ingredient that has the power or the tendency to preserve, regardless of whether it has a preserving function in a specific product. Merriam-Webster defines 'preservative' as 'something that preserves or has the power of preserving.' Preservative, Merriam-Webster, https://www.merriam-webster.com/ (last visited Nov. 8, 2022) (emphasis added). The Oxford English Dictionary similarly defines 'preservative' as '[a] thing which preserves or tends to preserve.' Preservative, Oxford English Dictionary, https://www.oed.com/ (last visited Nov. 8, 2022) (emphasis added).

The Complaint also references a regulation that defines preservative as 'any chemical that, when added to food, tends to prevent or retard deterioration,' Dkt. No. 8 ¶ 10 (quoting 21 C.F.R. § 101.22(a)(5)) (emphasis added), and 'tends' denotes that

something is likely to behave in a certain way, not something that always does so, see Tend, Cambridge Dictionary, https://dictionary.cambridge.org/ (last visited Nov. 8, 2022) ('to be likely to behave in a particular way or have a particular characteristic.'); Tend, Macmillan Dictionary, https://www.macmillandictionary.com/ (last visited Nov. 8, 2022) ('to usually do a particular thing'). In accordance with those definitions of 'preservative,' it is plausible that a reasonable consumer would understand a product label that says 'No Preservatives' to mean that the product did not contain any ingredients that would tend to prevent or retard deterioration regardless whether that was their primary or intended function with respect to the Product.

Plaintiff has also plausibly alleged that—despite its 'No Preservatives' labeling—the Product contains . . . ingredients that the FDA has identified as having the tendency or power to preserve. The Complaint alleges that the FDA warned a different company that its products were misbranded because 'they contain the chemical preservative[s] ascorbic acid and citric acid,' Id. ¶13, and that the FDA identifies ascorbic acid and citric acids as ingredients consumers 'should look for to determine if a food contains preservatives,' id. ¶ 11. In fact, Defendant does not appear to dispute that ascorbic acid and citric acid have preserving functions in other products. See Dkt. No. 24 at 4. The Court thus rejects Defendant's argument that the label is not misleading as matter of law merely because Plaintiff has not alleged that ascorbic acid and citric acids actually had preserving functions in the Product, as opposed to their other identified functions. Fishon, 2020 WL 6564755, at *7 ('Where a representation is capable of two possible reasonable interpretations, the misleading one should not be rejected simply because there is an alternative, non-misleading interpretation.').

This holding is consistent with Judge Koeltl's opinion in Mason v. Reed's Inc., which similarly involved claims under NYGBL §§ 349 and 350 relating to a 'no preservatives' label on a product containing citric acid. 515 F. Supp. 3d 135 (S.D.N.Y. 2021). Relying on the plaintiff's 'detailed allegations, including that the FDA described citric acid as a preservative' and that 'the FDA sent warning letters that suggested that citric acid was a preservative,' the court found that 'the plaintiff has stated plausibly that the 'no preservatives' label was false and misleading.' Id. at 143. In reaching this decision, the court rejected defendant's argument that citric acid, at least as used in the defendant's product, does not function as a preservative, noting:

The defendant cites to an FDA warning letter that states that if citric acid is functioning as a preservative, the product must disclose that it contains preservatives. The defendant mistakenly infers that the inverse must also be true, namely that if a product contains citric acid not functioning as a preservative that it need not disclose that it contains preservatives. However, there is no basis to find that the safe harbor provisions would apply where citric acid, although a preservative, was being used only as a flavoring agent.

Id. at 145. The district court further noted that 'whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer.' Id.

Judge Koeltl expressly considered the fact that citric acid could be used as 'only as a flavor agent' and stated that this did not change his conclusion, noting that 'whether the citric acid in the products is a preservative is an objective fact independent of the

subjective intentions of the products' manufacturer.' 515 F. Supp. 3d at 145." (emphasis added).[11]

It is also important to note that the argument that an ingredient is not a `chemical preservative' unless it actually functions as a preservative has already been expressly rejected by the Eastern District of New York.

In Quiroz v. Beaverton Foods, Inc., 2019 WL 1473088 (E.D.N.Y.), the plaintiff challenged the defendant's labeling of the product as containing "No Preservatives" as misleading because the product contained citric acid. The defendant, on the other hand, argued that plaintiff failed to allege facts showing that citric acid "actually functions as a preservative" in the product. The complaint defined a "chemical preservative" as "any chemical that, when added to food, tends to prevent or retard deterioration thereof . . .". Based on this definition, plaintiff countered that "it is not necessary that [citric acid] function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency." Defendant disagreed, arguing that "[u]nder Plaintiff's and the FDA's shared definition, an ingredient is not a `chemical preservative' unless it actually functions as a preservative."

The *Quiroz* court agreed with the plaintiff, holding that the difference between "chemical preservative" and "natural preservative" is immaterial to plaintiff's claim because the label "No Preservatives" on the Product is misleading if it contains preservatives, regardless of whether the preservative substance in the product is artificially added or naturally occurring. *Id.*

The *Quiroz* court also highlighted the fact that other courts considering similar claims under §§ 349 and 350 have likewise not drawn a distinction between "chemical" and "natural" preservatives. *See, e.g.*, Hu v. Herr Foods, No. 2:16-cv-05037 (E.D. Pa. Sept. 25, 2017) (denying motion to dismiss claims under § 349 without differentiating between "chemical" and "natural" preservatives); *see also*, Silva v. Smucker National Foods, Inc., No. 14-CV-6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) (denying motion to dismiss and holding that whether the phosphoric acid in a particular product constitutes a preservative within the definition of 21 C.F.R. § 101.22(a)(5) is a "question of fact that cannot be decided as a matter of law"); *see also*, Kubilius v. Barilla America, Inc., No. 18 C 6656 (U.S.D.C, N.D. Illinois, Eastern Division) (joining the *Quiroz* court in rejecting the argument—for which defendant cited no legal authority—that plaintiff was required to plead facts indicating that citric acid "functions as a preservative" in defendant's product).

---

[11] *See also*, Simeone, et al. v. T. Marzetti Co., 21-cv-9111 (KMK) (S.D.N.Y. 2023) (Southern District of NY Judge Kenneth M. Karas rejected defendant's arguments that the plaintiff failed to sufficiently allege that citric acid acts as a preservative and that no reasonable consumer would believe citric acid is a preservative. Judge Karas held that plaintiff's allegations met the minimum pleading standard in claiming citric acid is a preservative in defendant's product. Judge Karas also reasoned that because those allegations were not "patently implausible or unrealistic," he could not as a matter of law determine whether the plaintiff was reasonably deceived); Ashour v. Ariz. Beverages U.S. LLC, 19-cv-7081 (AT) (OTW) (S.D.N.Y. Nov. 23, 2021) (finding plaintiff had met his heightened burden under Fed. R. Civ. P. 9(b) to plead with specificity a fraudulent statement where complaint alleged that product represented that it had `No Preservatives' but contained citric acid); Squeo v. Campbell Soup Co., No. 24-cv-02235, 2024 WL 4557680, at *6 (N.D. Cal. Oct. 22, 2024) (denying motion to dismiss New York GBL claims, finding that plaintiffs had "alleged more broadly that citric acid functions as a preservative when added to food in general"); Hayes v. Kraft Heinz Co., Case No. 1:23-cv-16596, United States District Court, N.D. Illinois, Eastern Division (November 13, 2024) (rejecting the defendants' argument that, even if the ingredients are artificial, plaintiffs did not adequately allege that the ingredients function as preservatives in the products. In making this determination, the Court relied on articles plaintiffs cited that describe both ingredients' role in preserving food, as well as FDA guidance that describes citric acid as a preservative. The Court held that these allegations were enough to withstand a motion to dismiss.); Watts v. Beiersdorf Inc., 24-CV-00527 (HG) (E.D.N.Y.) (Dec. 19, 2024) ("If citric acid generally functions as a preservative when added to food, then it is reasonable to infer at the pleading stage that it did so as an ingredient in the [at-issue] chips").

With respect to Plaintiff's non-GBL claims, Plaintiff intends to file an Amended Complaint to address any deficiencies identified by Defendant in its pre-motion letter, as well to incorporate the aforementioned declaration of Dr. Meyers.

Lastly, regarding Defendant's request for permission to participate remotely in the pre-motion on February 11, 2025, kindly note that the undersigned is also joining in this request, as I likewise am currently scheduled to be out-of-state on business travel at that time.

I thank the Court for its kind consideration and attention to this matter.

Sincerely,

Michael J. Gabrielli, Esq.

cc:     Creighton R. Magid
        Dorsey & Whitney LLP
        1401 New York Avenue NW, Ste. 900
        Washington, DC 20005