# GABRIELLI LEVITT LLP

2426 EASTCHESTER ROAD • SUITE 201 • BRONX, NEW YORK 10469
PHONE (718) 708-5322 • FAX (718) 708-5966
E-MAIL: michael@gabriellilaw.com. • WWW: www.gabriellilaw.com


March 26, 2025

**VIA ELECTRONIC FILING**

Hon. Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

***Re: Rodriguez v. Sazerac Company, Inc. d/b/a Stirrings***
***Case No. 2:24-cv-08206-RER-ST***

Dear Judge Reyes:

This office represents the Plaintiff in connection with the above-referenced matter. I write in response to the Defendant's letter (the "pre-motion letter"), dated March 19, 2025, requesting a pre-motion conference in connection with its planned motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

By way of background, our client is alleging that Sazerac Company, Inc. d/b/a Stirrings ("Sazerac"), has violated and continues to violate New York General Business Law ("GBL") §§ 349 and 350, and other laws, including, but not limited to, state express and implied warranty and unjust enrichment laws, by misleading consumers about the nature of certain cocktail mixers (the "Products" or "Product"[1]) that are sold under the "Stirrings" brand name with representations that the products contain "No Preservatives."

More specifically, Sazerac is engaging in false, deceptive and misleading acts and practices because the Products contain citric acid, a well-established preservative. To support this claim, Plaintiff has provided detailed allegations, including (i) that the Food and Drug Administration ("FDA") has described citric acid as a preservative, (ii) that the FDA has sent warning letters that suggest that citric acid is a preservative, and (iii) the Declaration of Dr. Marc Meyers ("Dr. Meyers"), a food scientist, who has described in detail how citric acid acts as a preservative in the Product.

Nonetheless, Defendant has advised the Court that it intends to move to dismiss, alleging that (i) Plaintiff's Amended Complaint fails to allege the actual concentration of citric acid in the Products, (ii) Plaintiff's Amended Complaint purportedly lacks any plausible allegations that the citric acid in the Products acts as a preservative, (iii) that a reasonable consumer would not understand that a "small amount" of citric acid to be inconsistent with a "no preservatives" representation on the Products' label, and (iv) that plaintiff's breach of express warranty and unjust enrichment claims must be dismissed.

First, with respect to the argument that the Amended Complaint fails to allege the actual concentration of

---

[1] The Products include, but are not limited to, Stirrings Margarita Cocktail Mix, Stirrings Old Fashioned Mix, Stirrings 5 Calorie Margarita Mix, Stirrings Paloma Mix, Stirrings Blood Orange Cocktail Mix, Stirrings Peach Bellini Mix, Stirrings Cosmopolitan Mix, Stirrings Apple Cocktail Mix, Stirrings Lemon Drop Cocktail Mix, Stirrings Bloody Mary Mix, Stirrings Pomegranate Cocktail Mix, Stirrings Sour Mix, Stirrings Mule Mix, Stirrings Mai Tai Mix, and Stirrings 5 Calorie Cosmopolitan Mix. Discovery may demonstrate that additional Stirrings products are within the scope of our client's Complaint.

citric acid in the Products, it should be noted that Dr. Meyers has specifically stated the following in his Declaration:

> "Citric acid can affect the taste of products. However, some effects of citric acid, such as imparting changes to taste, only take place if there is a sufficient quantity of acid in the product.
>
> If the level of acid is too low, the acid will not change the taste or flavor of the product.
>
> Notably, **citric acid acts as preservatives at levels *below* the threshold required for them to affect the taste of a food product**. Levels **as low as 0.03%** citric acid have been confirmed to have an effect on reducing the growth or stopping the growth of pathogenic microorganisms. In threshold sensory studies for citric acid, which tested down to levels ranging from 0.003% to 0.10%, participants could not detect sourness of citric acid (recognition threshold) **until 0.04% was reached. Notably, this is higher than the level where citric acid shows effects on pathogens at 0.03%**. The Defendant claims the Citric Acid is used for flavoring, **so it is assumed the use level is well above the 0.04% sensory taste threshold**. Therefore, above the preservative effect level in the above study.
>
> With a higher quantity of citric acid, this preservative effect will be more pronounced, but they still occur when low levels of acid are present.
>
> Accordingly, **if citric acid is impacting taste, then it is necessarily present in amounts high enough to be having a preservative effect**.
>
> In my experience, citric acid is often used to help with a product's flavor profile, which for these Products as on the label "For Flavor" would be characterized as providing "sourness" or "tanginess" or to accentuate the other fruit, citrus, etc. flavors of the cocktail mix.
>
> This is relevant because the citric acid provides tang, and complement the fruitiness and other flavor profiles of the 15 Stirrings Cocktail Mixer Products.
>
> However, the pH-lowering ability of citric acid also makes it function as an acidulant (and therefore, a preservative); and it controls the growth of microorganisms. An acidulant lowers the pH, and by definition, lowering the pH **is a method of preservation**. Therefore, the Products do contain a preservative and cannot meet the "No Preservatives" claim because citric acid is above the taste threshold, and therefore, is present in sufficient quantities to lower the pH; and have a preservation effect." (emphasis added).

Accordingly, the Amended Complaint specifically alleges, based upon the expert opinion of a food scientist, that irrespective of the specific amount of citric acid in the Products, the amount necessarily must be above the level where citric acid shows effects on pathogens, i.e., a preservative effect (0.03%) and likewise above the 0.04% sensory taste threshold. In other words, inasmuch as the Defendant here has conceded that the citric acid in the Products is used as a "flavoring agent," then the amount of citric acid that the Defendant puts in its Products must be high enough to have a preservative effect.

Notably, Defendant has not presented its own expert to refute the learned opinion of Dr. Meyers. The reason being that a manufacturer's subjective intent for including citric acid in a product has no bearing on function, which is a matter of ***scientific fact***, not human purposes. To put it plainly, subjective intentions cannot alter the laws of chemistry and Defendant would be hard pressed to present a food scientist/expert that could credibly allege that the amount of citric acid in the Products can impart taste and yet have no preservative effect.

In the same vein, there is no reason to believe that a reasonable consumer would care about a manufacturer's subjective intent, since this does not affect the physiological effects of preservatives.

Moreover, with respect to the "plausibility" of Plaintiff's claims, and the interpretations of a reasonable consumer, it should likewise be noted that there exists a plethora of cases that have already addressed these issues in the context of "no preservatives" statements and the inclusion of citric acid in food/beverage products.

For instance, in Mason v. Reed's, Inc., 515 F. Supp. 3d 135 (S.D.N.Y. 2021), the Plaintiff alleged that the defendant's "no preservatives" labeling were materially misleading because they were false (i.e., the products contained citric acid, a preservative) and likely to mislead a reasonable consumer acting reasonably. The defendant, on the other hand, argued that (i) plaintiff could not state plausibly that defendant violated sections 349 and 350 of the New York General Business Law, and (ii) that the citric acid used in its products did not function as a preservative but, instead, as a flavoring agent. The Court held that:

> "The defendant argues that the citric acid in the defendant's products does not "tend[ ] to prevent or retard deterioration" of the products because it is used as a flavoring agent as opposed to as a preservative. The defendant argues that because the citric acid is not acting as a preservative, the labeling is protected by the safe harbor provisions. The defendant cites to an FDA warning letter that states that if citric acid is functioning as a preservative, the product must disclose that it contains preservatives. The defendant mistakenly infers that the inverse must also be true, namely that if a product contains citric acid not functioning as a preservative that it need not disclose that it contains preservatives. However, there is no basis to find that the safe harbor provisions would apply where citric acid, although a preservative, was being used only as a flavoring agent. In support of its argument, the defendant states that the plaintiff failed to allege that the defendant intended the citric acid in its products to act as a preservative and the defendant contends that citric acid actually functions as a flavoring agent in its products. But whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer. The plaintiff alleges in some detail that citric acid is a preservative and acts as a preservative in the defendant's products. In his declaration, Dr. Meyers asserts that citric acid is a preservative and can act as one in the defendant's products. See SAC Ex C. Moreover, the FDA lists citric acid as a preservative on its website. And several courts have concluded that, at least at the motion to dismiss stage, it would be improper to conclude that citric acid is not a preservative. See, e.g., Ashour, 2020 WL 5603382, at *3 ; Quiroz, 2019 WL 1473088, at *8 ; Hu, 2017 WL 11551822, at *1 n.4. Accordingly, it is at least ambiguous whether citric acid can be considered a preservative in the defendant's products. Therefore, it cannot be concluded on a motion to dismiss that the defendant complied with the safe harbor provisions."

In Kelly v. Beliv LLC, 640 F. Supp. 3d 286 (S.D.N.Y. 2022), plaintiff alleged that defendant's juice-based beverage, which was represented as containing "No Preservatives," was materially misleading because the product contained citric acid as an ingredient. With respect to the defendant's motion to dismiss, the Court held:

> "Plaintiff plausibly alleges that a reasonable consumer may be misled by Defendant's labeling of the Product with the phrase 'No Preservatives.' Contrary to Defendant's contention, the word 'preservative' does not appear only to refer to an ingredient that 'actually function[s]' in a specific product to preserve a given product. Dkt. No. 24 at 9. Instead, the term 'preservative' appears to have two possible meanings: First, it denotes an ingredient that actually functions to preserve a specific product. Alternatively, and as relevant here, it may denote an ingredient that has the power or the tendency to preserve, regardless of whether it has a preserving function in a specific product. Merriam-Webster defines 'preservative' as 'something that preserves or has the power of preserving.' Preservative, Merriam-Webster, https://www.merriam-webster.com/ (last visited Nov. 8, 2022) (emphasis added). The Oxford

English Dictionary similarly defines 'preservative' as '[a] thing which preserves or tends to preserve.' Preservative, Oxford English Dictionary, https://www.oed.com/ (last visited Nov. 8, 2022) (emphasis added).

The Complaint also references a regulation that defines preservative as 'any chemical that, when added to food, tends to prevent or retard deterioration,' Dkt. No. 8 ¶ 10 (quoting 21 C.F.R. § 101.22(a)(5)) (emphasis added), and 'tends' denotes that something is likely to behave in a certain way, not something that always does so, see Tend, Cambridge Dictionary, https://dictionary.cambridge.org/ (last visited Nov. 8, 2022) ('to be likely to behave in a particular way or have a particular characteristic.'); Tend, Macmillan Dictionary, https://www.macmillandictionary.com/ (last visited Nov. 8, 2022) ('to usually do a particular thing'). In accordance with those definitions of 'preservative,' it is plausible that a reasonable consumer would understand a product label that says 'No Preservatives' to mean that the product did not contain any ingredients that would tend to prevent or retard deterioration regardless whether that was their primary or intended function with respect to the Product.

Plaintiff has also plausibly alleged that—despite its 'No Preservatives' labeling—the Product contains . . . ingredients that the FDA has identified as having the tendency or power to preserve. The Complaint alleges that the FDA warned a different company that its products were misbranded because 'they contain the chemical preservative[s] ascorbic acid and citric acid,' Id. ¶13, and that the FDA identifies ascorbic acid and citric acids as ingredients consumers 'should look for to determine if a food contains preservatives,' id. ¶ 11. In fact, Defendant does not appear to dispute that ascorbic acid and citric acid have preserving functions in other products. See Dkt. No. 24 at 4. The Court thus rejects Defendant's argument that the label is not misleading as matter of law merely because Plaintiff has not alleged that ascorbic acid and citric acids actually had preserving functions in the Product, as opposed to their other identified functions. Fishon, 2020 WL 6564755, at *7 ('Where a representation is capable of two possible reasonable interpretations, the misleading one should not be rejected simply because there is an alternative, non-misleading interpretation.').

This holding is consistent with Judge Koeltl's opinion in Mason v. Reed's Inc., which similarly involved claims under NYGBL §§ 349 and 350 relating to a 'no preservatives' label on a product containing citric acid. 515 F. Supp. 3d 135 (S.D.N.Y. 2021). Relying on the plaintiff's 'detailed allegations, including that the FDA described citric acid as a preservative' and that 'the FDA sent warning letters that suggested that citric acid was a preservative,' the court found that 'the plaintiff has stated plausibly that the 'no preservatives' label was false and misleading.' Id. at 143. In reaching this decision, the court rejected defendant's argument that citric acid, at least as used in the defendant's product, does not function as a preservative, noting:

The defendant cites to an FDA warning letter that states that if citric acid is functioning as a preservative, the product must disclose that it contains preservatives. The defendant mistakenly infers that the inverse must also be true, namely that if a product contains citric acid not functioning as a preservative that it need not disclose that it contains preservatives. However, there is no basis to find that the safe harbor provisions would apply where citric acid, although a preservative, was being used only as a flavoring agent.

Id. at 145. The district court further noted that 'whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer.' Id.

Judge Koeltl expressly considered the fact that citric acid could be used as 'only as a flavor agent' and stated that this did not change his conclusion, noting that 'whether the citric acid in

the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer.' 515 F. Supp. 3d at 145." (emphasis added).[2]

More recently, in Squeo v. Campbell Soup Co., No. 24-cv-02235, 2024 WL 4557680, at *6 (N.D. Cal. Oct. 22, 2024), defendant's motion to dismiss similar New York GBL claims was denied, as the Court held that plaintiffs had "alleged more broadly that citric acid functions as a preservative when added to food in general."

In *Squeo*, the packaging for several flavors of Defendant's potato chips "prominently displayed" that the chips contained "No Artificial Colors, Flavors or Preservatives." Defendants raised several arguments in requesting dismissal, including (i) that plaintiffs did not sufficiently allege that the citric acid included in the chips functioned as a preservative; and (ii) that plaintiffs did not sufficiently allege that a reasonable consumer would be deceived by the labeling on the chips' packaging. The Court, in rejecting these arguments and holding that the plaintiffs satisfied the reasonable consumer standard, held:

> "Plaintiffs satisfy that standard here—they allege that the chips' packaging represents that the chips do not contain artificial preservatives and that the chips nevertheless do, in direct contravention of that representation, contain an artificial preservative. At the pleading stage, those allegations suffice. See, e.g., Stewart v. Kodiak Cakes, LLC, 537 F. Supp. 3d 1103, 1147-48 (S.D. Cal. Apr. 29, 2021) ("The Court finds that Plaintiffs plausibly plead that a reasonable consumer could be misled by advertising products as not containing artificial additives or preservatives where the products contain ingredients that Plaintiffs allege are additives or preservatives." (citation omitted)); cf. Van Mourik v. Big Heart Pet Brands, Inc., No. 17-cv-03889-JD, 2018 WL 1116715, at *4 (N.D. Cal. Mar. 1, 2018) ("[T]he complaint plausibly alleges that a reasonable consumer could be misled by the challenged representations. A consumer might reasonably understand 'All Natural Dog Food With Added Vitamins, Minerals, & Nutrients' to mean that the food is free of synthetic additives apart from the added vitamins, minerals, and nutrients. But the complaint alleges that the foods contain synthetic and artificial ingredients that are not vitamins, minerals, or nutrients, including sodium tripolyphosphate, citric acid, and lactic acid.").
>
> Defendants object to Plaintiffs' citations to scientific journals and agency opinions as not representative of the views of reasonable consumers. See Motion at 8 (citing FAC ¶¶ 28-31). But in the referenced paragraphs of the FAC, Plaintiffs do not refer to the cited authorities to demonstrate whether a reasonable consumer would be deceived; rather, they rely on those authorities to support their allegation that the chips contain artificially produced citric acid. See FAC ¶¶ 28-31. Defendants also assert that Plaintiffs' "theory requires consumers to read the 'No Artificial Colors, Flavors or Preservatives' statement as meaning 'No Multi-Function Ingredients Where One Possible Function Is As A Preservative, Even Where The Ingredient Does Not Function As A Preservative In This Product[,]'" an interpretation that no reasonable consumer would reach. See Motion at 10. As discussed above, however, Plaintiffs sufficiently allege that the citric acid in the chips functions as a preservative, thereby requiring consumers

---

[2] *See also*, Simeone, et al. v. T. Marzetti Co., 21-cv-9111 (KMK) (S.D.N.Y. 2023) (Southern District of NY Judge Kenneth M. Karas rejected defendant's arguments that the plaintiff failed to sufficiently allege that citric acid acts as a preservative and that no reasonable consumer would believe citric acid is a preservative. Judge Karas held that plaintiff's allegations met the minimum pleading standard in claiming citric acid is a preservative in defendant's product. Judge Karas also reasoned that because those allegations were not "patently implausible or unrealistic," he could not as a matter of law determine whether the plaintiff was reasonably deceived); Ashour v. Ariz. Beverages U.S. LLC, 19-cv-7081 (AT) (OTW) (S.D.N.Y. Nov. 23, 2021) (finding plaintiff had met his heightened burden under Fed. R. Civ. P. 9(b) to plead with specificity a fraudulent statement where complaint alleged that product represented that it had `No Preservatives' but contained citric acid); Watts v. Beiersdorf Inc., 24-CV-00527 (HG) (E.D.N.Y.) (Dec. 19, 2024) ("If citric acid generally functions as a preservative when added to food, then it is reasonable to infer at the pleading stage that it did so as an ingredient in the [at-issue] chips").

to read the package label as meaning precisely what it says—that the chips contain no artificial preservatives—which is eminently reasonable.

In any event, whether a reasonable consumer would be deceived "will usually be a question of fact not appropriate for decision on demurrer." See Williams, 552 F.3d at 938 (citations omitted); see, e.g., Tapia v. Coca-Cola Co., No. 22-cv-01362-HSG, 2023 WL 2621346, at *4 (N.D. Cal. Mar. 23, 2023) ("At this stage, the Court cannot say as a matter of law . . . that a reasonable consumer would not be deceived by the product label." (citation omitted))."

Further, in the matter of Hayes v. Kraft Heinz Co., Case No. 1:23-cv-16596, United States District Court, N.D. Illinois, Eastern Division (November 13, 2024) the Court rejected the defendants' argument that, even if the citric acid was artificial, plaintiffs did not adequately allege that it functioned as a preservative in the products. In making this determination, the Court relied on articles plaintiffs cited that described citric acid's role in preserving food, as well as FDA guidance that describes citric acid as a preservative. The Court held that these allegations were enough to withstand a motion to dismiss.[3]

With respect to the argument that Sazerac has breached an express warranty by expressly warranting to Plaintiff and hypothetical class members that the Products do not contain preservatives, it should be noted that such a claim has repeatedly survived on a motion to dismiss in a number of cases involving citric acid-containing products. For instance, in Mason v. Reed's Inc., *supra*, the Court held that:

> "In this case, the plaintiff alleges that the defendant's products contained several express statements, such as "All-Natural," "No Preservatives," and others. The defendant contends those statements are merely product descriptions, rather than warranties. However, the statements, as alleged by the plaintiff, have the natural tendency to induce the buyer to purchase the defendant's product. And the plaintiff alleges that she relied on the defendant's statements as part of the bargain. Pursuant to New York Law, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y.U.C.C. Law § 2-313(1)(b). As a result, product labels and advertisements can create express warranties. See, e.g., Atik v. Welch Foods, Inc., No. 15-cv-5405, 2016 WL 5678474, at *12-13 (E.D.N.Y. Sept. 30, 2016) ; In re Frito-Lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *27. Indeed, several courts in this Circuit have found that similar statements on product labels create actionable warranties. See, e.g., Ault, 2014 WL 1998235, at *6 ("All Natural") ; Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d. 467, 482-83 (S.D.N.Y. 2014) ("Active Naturals" in a cosmetic product); In re Frito-Lay N. Am., Inc. All Natural Litig., 2013 WL 4647512, at *27 ("All Natural").
>
> Therefore, the statements on the defendant's products can constitute an express warranty. Whether those warranties were breached is a question of fact that cannot be decided on a

---

[3] Specifically, the Court held that "Plaintiffs allege specifically that citric acid . . . function as preservatives in the Products. See, e.g., [17] ¶¶ 19, 22. Plaintiffs also cite to scholarly articles describing both Ingredients' role in preserving food, as well as FDA guidance that describes citric acid as a preservative. These allegations are enough to withstand a motion to dismiss. See **Mason v. Reed's Inc.**, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (finding plaintiff sufficiently alleged citric acid was a preservative where plaintiff included "detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages"); Simeone v. T. Marzetti Co., 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) (denying motion to dismiss where the plaintiff alleged citric acid functions as a preservative)."

motion to dismiss. The plaintiff has pleaded enough to satisfy her burden to state a claim for breach of express warranty."

Similarly, in Kelly v. Kasim International Corporation, No. 1:2021cv08134 - Document 31 (S.D.N.Y. 2022), the Court held:

> "Plaintiff contends that Defendant has breached an express warranty by expressly warranting to Plaintiff and hypothetical class members that the Product did not contain preservatives. Dkt. No. 8 ¶ 87. Defendant's only rebuttal to the express warranty claim is that New York courts have dismissed express warranty claims where they have also dismissed NYGBL claims because the representations were insufficient as a matter of law to mislead a reasonable consumer. Dkt. No. 24 at 13. This Court, however, has not dismissed Plaintiff's NYGBL claims, so this argument is unavailing. The Court therefore denies the motion to dismiss Plaintiff's express warranty claims."[4]

Lastly, with respect to the argument that that our client cannot "piggyback" warranty and unjust enrichment claims, it should be noted that this argument has been rejected by several courts. For instance, in Mason v. Reed's Inc., *supra*, the defendant argued that the plaintiff's unjust enrichment claim should have been dismissed because it was duplicative of other claims and not pleaded with sufficient particularity. The Court held that:

> "A claim for unjust enrichment requires a showing "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006). A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (N.Y. 2012). In this case, the plaintiff has alleged that the defendant benefited at the plaintiff's expense. The plaintiff purchased the defendant's product. The plaintiff also has alleged that equity and good conscience require restitution because the defendant's profit was due to allegedly untrue or misleading statements. The defendant contends that an unjust enrichment action would be duplicative of the breach of warranty and Section 349 and 350 claims. However, even if the plaintiff were unable to recover for the distinct theories of liability, Federal Rule of Civil Procedure 8(d)(3) permits a party to state "as many separate claims or defenses as it has, regardless of consistency." *Fed. R. Civ. P. 8(d)(3)*. Moreover, the Court of Appeals for the Second Circuit recently noted that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim[.]" Axon, 813 F. App'x at 706. Therefore, the plaintiff has pleaded adequately her unjust enrichment claim, and whether she can recover will turn on issues of fact that cannot be determined on the motion to dismiss. Accordingly, "[a]t this stage of the proceedings, [the plaintiff's] unjust enrichment claim cannot be dismissed on what is basically a factual issue." Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) (denying motion to dismiss unjust enrichment claim pleaded in the alternative to a breach of warranty claim)."[5]

---

[4] *See also*, Squeo v. Campbell Soup Co., No. 24-CV02235-SVK, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024)(breach of express warranty claim survives motion to dismiss).

[5] *See also*, Scholder v. Sioux Honey Association Cooperative, No. CV 16-5369 (GRB) (E.D.N.Y. 2022) (denying motion to dismiss unjust enrichment claim pleaded in the alternative to other theories of liability).

In sum, based upon the plethora of case law/precedent that establishes the plausibility of the allegations within the Amended Complaint, the expert opinion of Dr. Meyers, and the lack of an expert opinion to refute the learned opinion of Dr. Meyers, it is respectfully submitted that Defendant's planned motion to dismiss the Amended Complaint would simply be a waste of this honorable Court's valuable time and resources. Nonetheless, I look forward to a pre-motion conference to discuss the foregoing in greater detail.

I thank the Court for its kind consideration and attention to this matter.

Sincerely,

Michael J. Gabrielli, Esq.

cc: Creighton R. Magid
Dorsey & Whitney LLP
1401 New York Avenue NW, Ste. 900
Washington, DC 20005