UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| TERESA RODRIGUEZ, individually and on behalf of all others similarly situated, | |
|---|---|
| Plaintiff, | Case No.: 2:24-cv-08206 |
| v. | |
| SAZERAC COMPANY, INC. D/B/A STIRRINGS, | **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Defendant. | |

Elizabeth R. Baksh
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200
Facsimile: (646) 607-8476
baksh.elizabeth@dorsey.com

Creighton R. Magid (admitted *pro hac vice*)
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3555
Fax: (202) 315-3852
Email: magid.chip@dorsey.com

Attorneys for Defendant Sazerac Company, Inc. D/B/A STIRRINGS

Date: July 3, 2025

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................ii

ARGUMENT ........................................................................................................... 2

I. THE AMENDED COMPLAINT FAILS PLAUSIBLY TO ALLEGE THAT CITRIC ACID ACTS AS A PRESERVATIVE IN STIRRINGS. ............ 3

II. THE AMENDED COMPLAINT FAILS TO ALLEGE THAT REASONABLE CONSUMERS CONSIDER CITRIC ACID TO BE A "PRESERVATIVE" WHEN IT DOES NOT ACT AS A PRESERVATIVE IN A PRODUCT. ............................................................... 7

III. THE AMENDED COMPLAINT FAILS PLAUSIBLY TO ALLEGE THAT CONSUMERS PREFER PRODUCTS WITHOUT CITRIC ACID. ................................................................................................................ 8

IV. THE EXPRESS WARRANTY AND UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED. ............................................................ 9

CONCLUSION ...................................................................................................... 11

TABLE OF AUTHORITIES

**Cases**

Page

*Advanced Knowledge Tech, LLC v. Fleitas*, No. 21-cv-992, 2021 WL 6126966 (S.D.N.Y. Dec. 28, 2021) .................................................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 2, 3, 7

*Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) ............................................................................................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 2, 3, 7

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020) ............................ 8

*Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) ........................................................ 11

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) ................................. 1

*Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395 (S.D.N.Y. 2022) ........... 10

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) .......................................... 8

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011) ....................................................... 11

*Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) ..................................... 5

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020) ......... 9

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243 (2d Cir. 2018) ............................................................................................................. 11

*Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939 (W.D. Wis. 2008) ....................................................................................... 5

*Valencia v. Snapple Bev. Corp.*, No. 23-cv-1399, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ............................................................................................... 10

**Statutes**

N.Y. General Business Law §§ 349 and 350 ......................................................... 7, 9

**Other Authorities**

April 11, 2023, FDA Warning Letter to Juicer Connections, Inc. (https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juicer-connections-inc-648714-04112023 ................ 5

August 13, 2024, FDA Warning Letter to NRS Enterprises, Inc. d/b/a Sunflour Bakery (https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/nrs-enterprises-inc-dba-sunflour-bakery-681329-08132024) ........................................................................................................................ 4

Dawson PL, et al., "Effect of Temperature on the Intensity of Basic Tastes: Sweet, Salty and Sour," *J. Food Research*, 5(4) (June 27, 2016).......................................... 7

FDA, *Substances Added to Food* (https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juicer-connections-inc-648714-04112023) ................................................................................................... 1

Penniston KL, Nakada SY, Holmes RP, Assimos DG, "Quantitative assessment of citric acid in lemon juice, lime juice, and commercially-available fruit juice products," *J Endourol.* 22(3):567-70 (March 2008)................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1

**Regulations**

21 C.F.R. § 10.85(k) .................................................................................................... 5

21 C.F.R. § 101.22(a)(5) ......................................................................................... 1, 4

21 C.F.R. § 170.3(o)(11) .............................................................................................. 1

Citric acid is an organic acid that can serve a variety of purposes as an ingredient in food. Declaration of Marc Meyers (attached as Exhibit D to the Amended Complaint) ¶ 46.[1]  Among other things, it can serve as a flavor enhancer – a "[s]ubstance[ ] added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11); FDA, *Substances Added to Food* (https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juicer-connections-inc-648714-04112023).  It can serve as a flavoring agent or adjuvant – a "[s]ubstance[ ] added to impart or help impart a taste or aroma in food." 21 C.F.R. § 170.3(o)(12); FDA, *Substances Added to Food*.  And, in certain circumstances, it can serve as a preservative – a "chemical that, when added to food, tends to prevent or retard deterioration thereof." 21 C.F.R. § 101.22(a)(5); FDA, *Substances Added to Food*.

"Stirrings" is a line of high-quality, non-alcoholic cocktail mixers made with real fruit and vegetable juices.  Plaintiff Teresa Rodriguez, based solely on the presence of citric acid in the ingredient statements of certain Stirrings products, alleges that the citric acid in those Stirrings produces acts as a preservative, rendering the label claim "No Preservatives" misleading.  Yet even after the Court permitted Rodriquez to file an Amended Complaint, the Amended Complaint

---

[1]   On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

contains only conclusory assertions regarding the citric acid in the Stirrings products. The ingredient statements make clear that the citric acid in Stirrings products is present as a *flavoring agent*. *See* Amended Complaint Ex. B. Further, as the Amended Complaint and the accompanying Declaration of Marc Meyers make clear, the concentration of citric acid must exceed a threshold before it can have any preservative effect, yet the Amended Complaint is silent on the concentration of citric acid in Stirrings products. Finally, the Amended Complaint acknowledges that the mechanism by which citric acid acts as a preservative in food or beverages is by lowering pH below a certain threshold. Yet where other ingredients in a product such as Stirrings themselves reduce pH below the threshold, the addition of citric acid can have no preservative effect. The Amended Complaint wholly fails to explain how citric acid can be considered a preservative in such a product. Because the Amended Complaint does not plausibly state a claim upon which relief may be granted, the Amended Complaint should be dismissed in its entirety.

## **ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and a must be "plausible on [their] face." *Id.* at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's

2

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Amended Complaint, despite being Rodriguez's second bite at the apple, offers only "naked assertions" and "conclusory statements" regarding citric acid's function in the Stirrings products. Rodriguez apparently did not even test the products to determine the concentration of citric acid in the products or whether the addition of citric acid to the products provided any preservative effect. Because the Amended Complaint does not plausibly allege that the "No Preservatives" statement on Stirrings products is false or misleading, the Amended Complaint must be dismissed.

**I. THE AMENDED COMPLAINT FAILS PLAUSIBLY TO ALLEGE THAT CITRIC ACID ACTS AS A PRESERVATIVE IN STIRRINGS.**

The gravamen of Rodriguez's Amended Complaint is that "Defendant's "No Preservatives" representations are false, deceptive and misleading because the Products contain the synthetic preservative, citric acid." Am. Complaint ¶ 3. Yet the Amended Complaint is devoid of allegations establishing that the citric acid in Stirrings serves as a preservative.

3

As the Amended Complaint concedes, citric acid can serve a variety of different purposes, including as a flavoring agent, a flavor enhancer, nutritive additive, and emulsifier. Am. Complaint Ex. D at ¶ 46. The ingredient list on packages of Stirrings clearly states that citric acid is present and used solely as a flavoring agent. Am. Complaint Ex. B ("CITRIC ACID (FOR FLAVOR)"). The Amended Complaint nonetheless asserts that the citric acid in Stirrings acts a preservative, based solely on the assertion that it is *frequently* used as a preservative in the food industry. Am. Complaint ¶ 27. The mere fact that citric acid may be used as a preservative in *other* products, however, is insufficient to allege plausibly that citric acid serves as a preservative in Stirrings.

Whether citric acid is a preservative depends upon how it is used in a particular product. This is made clear in 21 C.F.R. § 101.22(a)(5), which defines a "chemical preservative" as "any chemical, when added to food, tends to prevent or retard deterioration thereof . . .." The U.S. Food & Drug Administration has repeatedly emphasized that whether citric acid is a preservative depends on its use in a specific product. *See, e.g.,* August 13, 2024, FDA Warning Letter to NRS Enterprises, Inc. d/b/a Sunflour Bakery (https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/nrs-enterprises-inc-dba-sunflour-bakery-681329-08132024) ("*if* the citric acid ingredient in these products is functioning as a preservative, the preservative function must be declared in accordance with 21 CFR 101.22(j)") (emphasis added); April 11, 2023, FDA Warning Letter to Juicer Connections, Inc. (https://www.fda.gov/inspections-

4

compliance-enforcement-and-criminal-investigations/warning-letters/juicer-connections-inc-648714-04112023) ("*If* ascorbic acid or citric acid are used as preservatives, they must be declared in the ingredient list stating both the common or usual name of the ingredient(s) and a separate description of its function . . ..") (emphasis added).[2] Thus, if citric acid, when added to Stirrings, does *not* tend to prevent or retard deterioration of the product, it is not a preservative. *See also Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017) (granting defendant's motion on the pleadings "with respect to Plaintiff's [GBL § 349] theory that a reasonable consumer would understand an ingredient in a particular product to be a preservative, regardless of whether it actually preserves the product.").

The Amended Complaint lacks *any* factual allegations supporting Rodriguez's assertion that citric acid serves as a preservative *in the Stirrings products*. Although the Amended Complaint explains that citric acid can act as a preservative by lowering a product's pH, Am. Complaint ¶¶ 38 – 41, it fails to allege the pH at which the preservative effect is reached. Further, despite the issue having been raised at the pre-motion conference regarding Sazerac's proposed motion to dismiss

---

[2] That the warning letter attached as Exhibit C to the Amended Complaint refers to ascorbic acid and citric acid in "Pineapple Bites" and "Pineapple Bites with Coconut" as preservatives *in those products* does not suggest a contrary conclusion. Moreover, the warning letter attached as Exhibit C "is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed." 21 C.F.R. § 10.85(k); *see also Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939, 947 (W.D. Wis. 2008) (FDA warning letters "do not constitute an official agency determination") (collecting cases).

5

the original Complaint, the Amended Complaint fails to address whether the pH of Stirrings in the absence of added citric acid is sufficiently low that the added citric acid has no preservative effect. As the ingredient list reproduced as Exhibit B to the Amended Complaint makes plain, the predominant ingredient in the exemplar Stirrings product after water is lime juice, which contains a high concentration of citric acid.[3] Additionally, the Amended Complaint acknowledges that heat treatment provides significant preservative effects and concedes that Stirrings employs such heat treatment. Am. Complaint ¶ 40 and Ex. D at ¶ 76. If the pH of Stirrings – particularly if combined with heat treatment – is sufficient to preserve the product without the addition of citric acid, the citric acid added to the product cannot, by definition, be a "preservative" in Stirrings.

Additionally, the Amended Complaint acknowledges that there is a threshold concentration below which citric acid has no preservative effect. Am. Complaint Ex. D at ¶ 48 ("With enough citric acid," spoilage "can be prevented over and above the shelf life of a food product.") Yet the Amended Complaint contains no factual allegations regarding the *amount* of added citric acid in Stirrings products or whether the amount of citric acid in Stirrings products would, by itself, be sufficient to impart any preservative effect on the products.[4]

---

[3] *See, e.g.*, Penniston KL, Nakada SY, Holmes RP, Assimos DG, "Quantitative assessment of citric acid in lemon juice, lime juice, and commercially-available fruit juice products," *J Endourol.* 22(3):567-70 (March 2008).

[4] Rodriguez employs the Declaration of Marc Meyers in an attempt to address this shortcoming by suggesting that if the added citric acid in Stirrings is sufficient to add flavor to the product, it must also exceed the preservative threshold. Am. Complaint ¶¶ 30 – 31. However, a review of the references cited by Dr. Meyers

6

The Amended Complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Instead, it offers only "'naked assertion[s]' devoid of 'further factual enhancement,'" which is insufficient to assert a plausible claim for relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Accordingly, the Amended Complaint must be dismissed.

## II. THE AMENDED COMPLAINT FAILS TO ALLEGE THAT REASONABLE CONSUMERS CONSIDER CITRIC ACID TO BE A "PRESERVATIVE" WHEN IT DOES NOT ACT AS A PRESERVATIVE IN A PRODUCT.

The Amended Complaint contains no allegations that a reasonable consumer would understand the "no preservatives" statement to mean that Stirrings is devoid of any ingredient that could be used as preservatives in *another* product, even if the ingredient does not act as a preservative in Stirrings. Because N.Y. General Business Law §§ 349 and 350 both require a showing that a label is "likely to mislead a reasonable consumer acting reasonably under the circumstances," *Chufen*

---

reveals that Dr. Meyers has it backwards: his own sources demonstrate that citric acid imparts taste at concentrations far below the concentration required for a preservative effect. Dr. Meyers cites to an article suggesting that citric acid has a preservative effect at concentrations as low as 0.03%. Am. Complaint Ex. D at ¶ 52. He then cites to a different article to support his claim that participants cannot detect sourness in citric acid "until 0.04% was reached. *Id*. The cited article, however, says nothing about the minimum sensory threshold for citric acid; it concerns the effects of temperature on sensory intensity of sweet, salty, and sour flavors. *See* Dawson PL, et al., "Effect of Temperature on the Intensity of Basic Tastes: Sweet, Salty and Sour," *J. Food Research*, 5(4) (June 27, 2016) at 3. Moreover, the cited article includes a table indicating that persons can detect the flavoring effect of citric acid at a concentration of 0.4g in 1 liter of water – or 0.0004%. *Id*. The flavor sensory threshold for citric acid is therefore far below the threshold for a preservative effect, meaning that citric acid can serve as a flavoring agent without acting as a preservative.

7

*Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)), this failure is fatal to Rodriguez's claims. *See, e.g., Hu*, 251 F. Supp. 3d at 821 (granting defendant's motion on the pleadings regarding GBL § 349 claim because the complaint did not contain factual allegations suggesting "that a reasonable consumer would understand an ingredient in a particular product to be a preservative, regardless of whether it actually preserves the product.").

### III. THE AMENDED COMPLAINT FAILS PLAUSIBLY TO ALLEGE THAT CONSUMERS PREFER PRODUCTS WITHOUT CITRIC ACID.

The premise of the Amended Complaint is that consumers pay a premium for products containing no preservatives. Am. Complaint ¶ 47. But the Amended Complaint is devoid of any "factual matter" supporting that conclusory assertion. The 2015 article cited in the Amended Complaint as support for the proposition says only that a majority of surveyed Americans are willing to pay a premium for "healthier foods" – not preservative-free foods. *Id*. at n. 19.[5] Similarly, the 2012 Euromonitor summary cited in the Amendment Complaint, in addition to being grossly outdated, merely projected that the "health and wellness" market would reach $1 trillion globally by 2017; it says nothing about preservatives, specifically (or, for that matter, about American consumers, specifically). *Id*. at n. 20. Not only is the Amended Complaint bereft of any factual allegations suggesting that reasonable consumers understand "no preservatives" to include ingredients that act as preservatives in *other* products but do not act as preservatives in the labeled

---

[5] Sazerac is unable to access the cited January 2015 Nielsen report.

8

product, but it also lacks any factual allegations supporting the allegation that consumers pay a price premium for products labeled "no preservatives."

## IV. THE EXPRESS WARRANTY AND UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED.

Rodriguez's express warranty claim (Count III) fails for the same reason her NY GBL §§ 349 and 350 claims fail: the Amended Complaint does not plausibly allege that the citric acid in Stirrings products acts as a preservative in the products. Further, as noted above, the Amended Complaint does not contain any allegations that a reasonable consumer would understand the "no preservatives" statement to mean that Stirrings is devoid of any ingredient that could be used as preservatives in *another* product, even if the ingredient does not act as a preservative in Stirrings. *See, e.g., Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) (breach of express warranty claim based on product label turned on "what a reasonable consumer's interpretation might be"); *Hu*, 251 F. Supp. 3d at 821 (judgment on the pleadings granted to defendant because the complaint did not contain factual allegations suggesting "that a reasonable consumer would understand an ingredient in a particular product to be a preservative, regardless of whether it actually preserves the product."). Additionally, the Amended Complaint lacks any factual allegations suggesting that Stirrings consumers relied on the "no preservatives" statement. This, too, compels dismissal of the claim. *See, e.g., Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (buyers' reliance on a statement is an essential element of a breach of warranty claim).

Rodriguez's unjust enrichment claim is similarly unviable. An unjust enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 419 (S.D.N.Y. 2022). Accordingly, an unjust enrichment claim must be dismissed where a plaintiff "makes no factual allegations unique to [her] unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from . . . [her other] claims." *Valencia v. Snapple Bev. Corp.*, No. 23-cv-1399, 2024 WL 1158476, at *6 (S.D.N.Y. Mar. 18, 2024) (quoting *Advanced Knowledge Tech, LLC v. Fleitas*, No. 21-cv-992, 2021 WL 6126966, at *5 (S.D.N.Y. Dec. 28, 2021) (alterations and ellipses in original). Although it is true that claims may be pleaded in the alternative, "it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Id*. at *6 n. 8. Because the unjust enrichment claim in the Amended Complaint is duplicative of the other asserted causes of action, it must be dismissed.

## CONCLUSION

For the reasons set forth above, the Amended Complaint should be dismissed with prejudice.[6]

>                                  Respectfully submitted,
>
>                                  Elizabeth R. Baksh
>                                  DORSEY & WHITNEY LLP
>                                  51 West 52nd Street
>                                  New York, NY 10019
>                                  Telephone: (212) 415-9200
>                                  Facsimile: (646) 607-8476
>                                  baksh.elizabeth@dorsey.com

Date: July 3, 2025            */s/ Creighton R. Magid*
                                  Creighton R. Magid (admitted *pro hac vice*)
                                  DORSEY & WHITNEY LLP
                                  1401 New York Avenue, N.W. Suite 900
                                  Washington, D.C. 20005
                                  Telephone: (202) 442-3555
                                  Fax: (202) 315-3852
                                  Email: magid.chip@dorsey.com

                                  Attorneys for Defendant Sazerac
                                  Company, Inc. D/B/A STIRRINGS

---

[6] Where, as here, a plaintiff has been provided an opportunity to cure deficiencies in a complaint and fails to do so in an amended complaint, a court may properly deny leave to amend further. *See, e.g., Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) ("When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment [even if] the proposed second amended complaint in fact cures the defects of the first.'") (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)). Moreover, further amendment is inappropriate here because Rodriguez cannot show how amendment would cure the deficiencies. *See, e.g., Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result, the District Court did not err in dismissing her claim with prejudice.").

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of July, 2025, a copy of the foregoing was served on Plaintiff's counsel, Michael J. Gabrielli, Esq., using the CM/ECF system.

/s/ Creighton R. Magid
Creighton R. Magid
