## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERESA RODRIGUEZ, individually and on behalf of all other similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>SAZERAC COMPANY, INC. d/b/a STIRRINGS,<br><br>                 Defendant. | Case No. 2:24-cv-08206-RER-ST<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |

Michael J. Gabrielli (MG-2421)
GABRIELLI LEVITT LLP
2426 Eastchester Road, Suite 201
Bronx, New York 10469
Tel.: (718) 708-5322
Fax: (718) 708-5966
michael@gabriellilaw.com

*Counsel for Plaintiff & the Proposed Class*

Date: July 24, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................3

I. INTRODUCTION AND STATEMENT OF RELEVANT FACTS....................................7

II. RELEVANT STATUTORY AND REGULATORY BACKGROUND............................8

III. LEGAL STANDARDS ....................................................................................10

IV. ARGUMENT ...................................................................................................11

    a. *Despite Doing So, Plaintiff is Not Required to Plead Facts Indicating that Citric Acid "Functions as a Preservative" in Defendant's Products*............................11

        i. *The Declaration of Dr. Marc Meyers Provides Ample Support for the Inference that Citric Acid Does Actually Function as a Preservative in the Products*.................................................11

        ii. *Plaintiff's Allegations, Based on the Expert Report of Dr. Meyers, Are Sufficient to Plausibly State a Claim At This Stage*......................13

        iii. *Defendant's Memorandum in Support of its Motion to Dismiss is Replete with Mischaracterizations, Falsehoods & Inexact Attempts at Science*........................................................................................15

    b. *Relevant Inquiry is Whether the Label is Deceptive to a Reasonable Consumer— Not Whether the Citric Acid Actually Did What Plaintiff Alleges*......................17

    c. *Plaintiff Nonetheless Plausibly Alleges That the Citric Acid in the Products Functions as a Preservative*.................................................................19

        i. *It Is A Scientific Fact That If Citric Acid is Imparting Taste, Then It Is Necessarily Present In Amounts High Enough To Have A Preservative Effect*.................................................................................19

    d. *Plaintiff Sufficiently Alleges That The Labeling On The Products' Packaging Would Mislead A Reasonable Consumer*........................................22

    e. *Plaintiff Plausibly Alleges That On Account of a Materially Misleading Practice, She Purchased a Product and Did Not Receive the Full Value of Her Purchase*.................................................................................26

f.      *Plaintiff States a Claim for Breach of Express Warranty* ..............................27

g.      *Plaintiff States a Claim for Unjust Enrichment* ..............................................28

V. CONCLUSION ............................................................................................................31

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page(s)**

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185
(S.D.N.Y. 2009) ....................................................................................................30

*Andrade v. J.P. Morgan Chase Bank, N.A.*, No. 08-cv-3703 (RRM)(RLM),
2009 WL 2899874 (E.D.N.Y. Sept. 4, 2009) ......................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................10

*Ault v. J.M. Smucker Co.*, No. 13-3409, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) .............28

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002) ................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) .............................................10, 11, 13

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
133 F. Supp. 2d 162 (E.D.N.Y. 2001) ...............................................................30

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260
(S.D.N.Y. 1991) .............................................................................................30, 31

*Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012) .....................29

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)................................................22

*Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106 (2d Cir. 2010)....................................11

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)........................................10, 11

*Greene v. Gerber Prod. Co.*, 262 F.Supp.3d 38, 69 (E.D.N.Y. 2017)............................................26

*Gitson v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 33936 (N.D. Cal. Mar. 14, 2014)...........14, 25

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467
(S.D.N.Y. 2014) ...............................................................................................28

*Hanley v. Chicago Title Ins. Co.,* 2013 WL 3192174 (S.D.N.Y. June 24, 2013)........................11

*Hayes v. Kraft Heinz Co.*, No. 1:23-cv-16596, N.D. Illinois, Eastern Division (2024)...............25

*Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6245894 (S.D. Cal. Nov. 29, 2018)...........19

*Hu v. Herr Foods*, No. 2:16-cv-05037 (E.D. Pa. Sept. 25, 2017) ....................................13, 14, 18

*In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM),
2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...........................................................28, 29

*In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................29

*JTH Tax, Inc. v. Gouneh*, 721 F. Supp. 2d 132 (N.D.N.Y. 2010) ..........................................29, 30

*Kelly v. Beliv LLC*, 640 F. Supp. 3d 286 (S.D.N.Y. 2022)...............................................23

*Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 288-89 (S.D.N.Y. 2014)...........................26

*Kubilius v. Barilla America,* No. 18 C 6656 (U.S.D.C, N.D. Illinois, Eastern Division).............20

*Leonhart v. Nature's Path Foods, Inc.*, U.S. Dist. LEXIS 164425 (N.D. Cal. Nov. 21,
2014).........................................................................................................15

*Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021).............................19, 24, 25, 30

*Mono Advertising, LLC v. Vera Bradley Designs, Inc.*, 285 F. Supp. 3d 1087
(D. Minn. 2018) ..............................................................................................29

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015)...................................................26

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, .
2012 U.S. Dist. LEXIS 114606 (S.D.N.Y. Aug. 14, 2012) ...............................................29

*Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201 (S.D.N.Y. 2013) .....................................30

*Quiroz v. Beaverton Foods, Inc.*, 2019 WL 1473088 (E.D.N.Y.) .................................12, 18, 27

*Silva v. Smucker National Foods*, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .....................18

*Simeone v. T. Marzetti Co.*, 2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023)................................25

*Squeo v. Campbell Soup Co.*, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024)..............................25

*Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. Apr. 29, 2021)......................25

*Thornton v. Pinnacle Foods Group LLC,* 2016 WL 4073713 (E.D. Mo. 2016) .........................29

*Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)...........................................10, 11

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011).......................................10

## STATE CASES

**Page(s)**

*Ellen v. Heacock*, 247 A.D. 476 (N.Y. App. Div. 1936) ..............................................................27

*Niagara Mohawk Power Corp. v. Freed*, 265 A.D.2d 938 (N.Y. App. Div. 1999) ....................30

*Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89 (N.Y. App. Div. 2010) ...........................30


## FEDERAL RULES AND REGULATIONS

**Page(s)**

*21 C.F.R. § 101.22(a)(5)* ...............................................................................8, 12, 15, 17, 18, 23


## OTHER AUTHORITIES

**Page(s)**

*Types of Food Ingredients, FDA* (July 6, 2023), https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/types-food-ingredients..................................................8

*Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." Principles of food chemistry.* AVI Publishing Co., Inc., 1999.............................9

*https://www.healthline.com/nutrition/citric-acid#what-it-is*........................................................20

# I. INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Consumers care deeply about what constitutes the food they purchase, eat and drink. Accordingly, consumers rely on the information provided on food and beverage packaging in deciding whether to purchase a particular food or beverage. Consumers trust the information provided on packaging, particularly information that is prominently displayed on the product. This action is about Defendant's betrayal of that trust by misleading consumers and deceptively labeling certain of its cocktail mixers (the "Products")[1] as containing "No Preservatives" when, in fact, they contain citric acid, a well-established preservative.

As alleged in Plaintiff's Amended Complaint (the "Complaint"), Defendant is aware that "no preservatives" claims on a beverage is a purchase motivator for consumers. Accordingly, Defendant placed designations in bold on the front of each of the Products labeling them as containing "No Preservatives."

Unfortunately for consumers, Defendant's representations that the Products contain "No Preservatives" are untrue. Rather, Defendant's representations are false, deceptive and misleading because the Products contain citric acid, a well-established preservative. Plaintiff and Class members were therefore injured when they were deceived into purchasing a product whose value as delivered was substantially less than its value as warranted.

In support of her claims, Plaintiff alleges that she was misled by Defendant's preservative-free claims relating to the Products and that she would not have purchased the

---

[1] The Products include, but are not limited to, Stirrings Margarita Cocktail Mix, Stirrings Old Fashioned Mix, Stirrings 5 Calorie Margarita Mix, Stirrings Paloma Mix, Stirrings Blood Orange Cocktail Mix, Stirrings Peach Bellini Mix, Stirrings Cosmopolitan Mix, Stirrings Apple Cocktail Mix, Stirrings Lemon Drop Cocktail Mix, Stirrings Bloody Mary Mix, Stirrings Pomegranate Cocktail Mix, Stirrings Sour Mix, Stirrings Mule Mix, Stirrings Mai Tai Mix, and Stirrings 5 Calorie Cosmopolitan Mix.

Products had he known the truth about the Products containing a preservative. Notwithstanding these facts and other detailed allegations in the Complaint, Defendant has moved to dismiss. While Defendant's Memorandum forwards a bevy of gross inaccuracies and meritless arguments, Plaintiff's allegations are more than sufficient to sustain this class action.

## II. <u>RELEVANT STATUTORY AND REGULATORY BACKGROUND</u>

The Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."[2]

According to the FDA's website, citric acid is listed in the category of preservatives used to "prevent food spoilage from bacteria, molds, fungi or yeast" and slows and "prevents changes in color, flavor, or texture."[3] Citric acid is also listed for its effect of preventing spoilage and therefore, having a preservative effect.[4]

More particularly, the following table from the FDA's website lists the types of common food ingredients, their functions, why they are used, and some examples of the names that can be found on product labels:[5]

---

[2] 21 C.F.R. §101.22(a)(5).

[3] Types of Food Ingredients, FDA (July 6, 2023), https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/types-food-ingredients.

[4] Id.

[5] Id.

| Types of Ingredients | What They Do | Examples of Uses | Ingredient Names that May be Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |
| pH Control Agents and acidulants | Control acidity and alkalinity, prevent spoilage | Beverages, frozen desserts, chocolate, low acid canned foods, baking powder | Lactic acid, citric acid, ammonium hydroxide, sodium carbonate |

Citric acid functions in food products as a preservative by serving as an acidulant and as an indirect antioxidant. Citric acid infiltrates and weakens or kills microorganisms through direct antimicrobial effect, lowering a product's pH level, thereby combatting and sequestering microorganisms. Citric acid serves these functions regardless of whether it is being added as a flavoring agent.[6]

Industry participants also recognize that citric acid functions as a preservative. For example, one food additives supplier states: "Citric acid is the most commonly used acidulant in

_____

[6] Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." Principles of food chemistry. AVI Publishing Co., Inc., 1999, p. 438.

the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[7]

## III. <u>LEGAL STANDARDS</u>

In considering a Rule 12(b)(6) motion to dismiss, the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995) (quoting <u>Weisman v. LeLandais</u>, 532 F.2d 308, 311 (2d Cir. 1976)). Plaintiff need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court "must accept as true the [factual] allegations contained in the complaint, and all reasonable inferences must be drawn in favor of the non-movant." <u>Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz</u>, 290 F.3d 476, 479 (2d Cir. 2002). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)).

To survive the motion to dismiss pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); <u>Andrade v. J.P. Morgan Chase Bank, N.A.</u>, No. 08-cv-3703 (RRM)(RLM), 2009 WL 2899874, at *1 (E.D.N.Y. Sept. 4, 2009) (applying standard stated in Iqbal and denying motion to dismiss). Plaintiffs need only assert

---

[7] FBC Industries, Inc., Citrates, https://fbcindustries.com/citrates/.

factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "[t]he plausibility standard is not akin to a 'probability requirement . . . .'" Iqbal, 129 S. Ct. at 1946; *see also*, Twombly, 550 U.S. at 548 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely . . . Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible."' (quotation omitted)).

The "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (*quoting*, Weisman v. LeLandais, 532 F.2d 308, 311 (2d Cir. 1976)). A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Hanley v. Chicago Title Ins. Co., No. 12- 4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (*citing*, Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010)).

## IV. ARGUMENT

### a. *Despite Doing So, Plaintiff is Not Required to Plead Facts Indicating that Citric Acid "Functions as a Preservative" in Defendant's Product*

#### i. *The Declaration of Dr. Marc Meyers Provides Ample Support for the Inference that Citric Acid Does Actually Function as a Preservative in the Products*

In its moving papers, Defendant, makes the self-serving argument that Plaintiff fails to allege that Defendant's citric acid has any preservative effect in the Products. Defendant likewise seemingly argues, without the opinion of an expert or any evidence otherwise, that its citric acid

does not function as a preservative in the Products because Defendant only intended that it act as a flavor enhancer. In other words, Defendant's citric acid does not act as a preservative simply because Defendant does not intend for it to do so.

Defendant makes these peculiar claims despite the fact that Plaintiff's Amended Complaint contains the Declaration of Dr. Marc Meyers, which provides ample support for the inference that citric does actually function as a preservative in the Product.

In this regard it should be noted that a defendant's attempt to belittle the expert opinion of Dr. Meyers, without the opinion of an expert in support or any scientific evidence otherwise, has already been rejected in the Eastern District of New York.

In Quiroz v. Beaverton Foods, Inc., 2019 WL 1473088 (E.D.N.Y.), the plaintiff, similar to the matter at hand, challenged the defendant's labeling of the product as containing "No Preservatives" as misleading because the product contained citric acid. The defendant, on the other hand, argued that plaintiff failed to allege facts showing that citric acid "actually functions as a preservative" in the product.

In denying Defendant's motion to dismiss, the Court in *Quiroz* held:

> Defendant attributes to Plaintiff the view that a substance is preservative only if "it actually functions as a preservative." However, Plaintiff only endorsed a definition of preservatives according to which a preservative "*tends* to prevent or retard deterioration [of food]." (citing 21 C.F.R. §101.22(a)(5)). Furthermore, Plaintiff does not equate "tends" with "actually functions," but rather contends that it is not necessary that citric acid function as a preservative *in every single instance* for it to qualify as a preservative according to the FDA's definition, *so long as this is its general tendency*. Defendant does not offer any reason to dispute Plaintiff's interpretation of the FDA definition.
>
> At any rate, the Declaration of **Dr. Marc Meyers** provides ample support for the inference that citric does actually function as a preservative in the

Product. *See* Second Am. Compl., Exhibit C. *Defendant does not offer any concrete reasons to doubt Dr. Meyers' qualifications, which are fully laid out in his Declaration.* Dr. Meyers is a food scientist, and scientist understand that nature operates according to immutable laws. Thus, Dr. Meyers general scientific understanding of the Products' ingredients and the manufacture of beverages enabled him to determine that citric acid functions as a preservative within the Products. Engineers do not have to first build a bridge before they can assess whether it will hold up or collapse. Their knowledge of the laws of physics enable them to determine this from the bridge design alone. The same holds true regarding the function of citric acid in the Products.

Dr. Meyers's meaning is plain: food manufacturers, including Defendant, may employ citric acid for a variety of purposes, *including flavoring*. But *irrespective of these purposes, citric acid still functions as a preservative in the Products*. This stands to reason, since *subjective intentions cannot alter the laws of chemistry*. Dr. Meyers's underlying point is therefore the very opposite of Defendant's mischaracterization. Far from arguing that citric acid's preservative function depends on an intent to use citric acid in a particular way, he is explaining that *this intent does not matter at all*.

Plaintiff need only "nudge" her allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548. ***And the opinion of a food science Ph.D. with nearly 30 years of experience in the field surely suffices for this***. (emphasis added).

    ii.    *Plaintiff's Allegations, Based on the Expert Report of Dr. Meyers, Are Sufficient to Plausibly State a Claim At This Stage*

Defendant similarly argues that even if citric acid may be used as a preservative in other products, this fact is nonetheless insufficient to plausibly allege that citric acid functions as a preservative in Stirrings' Products. In other words, Defendant maintains that citric acid, when added to its Products, does not tend to prevent or retard deterioration of the product and, as such, is not a preservative. Defendant cites *Hu v. Herr Foods*[8] as an "instructive" case in this regard.

---

[8] Hu v. Herr Foods, Inc., 251 F. Supp. 3d 813, 821 (E.D. Pa. April 24, 2017) (granting defendant's motion on the pleadings "with respect to Plaintiff's [GBL § 349] theory that a reasonable consumer would understand an ingredient in a particular product to be a preservative, regardless of whether it actually preserves the product.")

Plaintiff is in full agreement with Defendant that *Hu* is an instructive case. However, Plaintiff will note that the decision cited by Defendant pertained to Hu's *First* Amended Complaint, *which lacked an expert report*. Upon dismissal, that complaint was amended again to include such a report. And this Second Amended Complaint was not dismissed, with the Court holding:

> First, Plaintiff plausibly alleges that the statement "No Preservatives Added" on Defendant's packaging for the products at issue ("the Products") is materially misleading because citric acid functions as a preservative in the Products. See SAC ¶¶ 21-37. This allegation is supported by the declaration of a food expert, **Dr. Marc Meyers**, who explains that "irrespective of Defendant's motivations for inserting citric acid in its snack foods (e.g., as a flavoring agent), the citric acid invariably functions as a preservative, because all of the Products at issue in this case contain enough fat to trigger citric acid's preservative qualities." Id. ¶ 37. Defendant argues that Plaintiff's allegations are "speculative and implausible" because Plaintiff's expert is not qualified to offer an opinion and his sources are irrelevant. Herr Br. at 5-10. Defendant's arguments regarding Dr. Meyers' qualifications and the factual basis for his opinions are properly made in support of a motion for summary judgment or motion to exclude expert testimony, not a motion to dismiss. Plaintiff's allegations are sufficient to state a claim at this stage. (emphasis added).[9]

As Defendant suggests, the Court should follow this most instructive case, which just happens to mean denying Defendant's motion to dismiss.

Furthermore, it bears noting that courts have allowed "no preservative" claims to survive motions to dismiss even in absence of an accompanying expert report. In *Gitson v. Trader Joe's Co.*,[10] the defendant faced a class action lawsuit alleging that its products used citric acid and sodium citrate without disclosing those ingredients' function as chemical preservatives. Trader Joe's moved to dismiss, asserting that its citric acid and sodium citrate did not function as

---

[9] Hu v. Herr Foods Inc. No. 2:16-cv-05037-ER, Dkt. 42, pgs. 3-4 n.4 (E.D.Pa. Sept. 25, 2017).

[10] Gitson v. Trader Joe's Co., No. 13-cv-01333, 2014 U.S. Dist. LEXIS 33936, at *13-14 (N.D. Cal. Mar. 14, 2014).

preservatives in the relevant products. Nonetheless, the court determined that plaintiffs had alleged sufficient facts to meet the heightened pleading requirement of Rule 9(b):

> "Trader Joe's provides no support for its contention that citric acid and sodium citrate do not fall under 21 C.F.R. §101.22(a)(5)'s definition. At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors or chemical preservatives. At this juncture, "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Accordingly, the plaintiffs have adequately alleged their claims regarding the purchased Undisclosed Additives Products under Rule 9(b)."

> iii. *Defendant's Memorandum in Support of its Motion to Dismiss is Replete with Mischaracterizations, Falsehoods and Inexact Attempts at Science*

As made clear in the Declaration of Dr. Marc Meyers, dated July 21, 2025, which accompanies this Memorandum in Opposition to Defendant's Motion to Dismiss, the Defendant's moving papers contain a number of false and inaccurate statements.

For instance, Defendant seemingly attempts to argue, without the support of an expert opinion, that lime juice and "heat treatment" provide "significant preservative effects" which, presumably, allows for the Defendant to use its citric acid strictly as a flavor enhancer and nullifies any preservative effect that its citric acid may have.

As Dr. Meyers makes clear, however:

> "Lime juice is providing one of those hurdles as well as the heat treatment which is the required "kill step". If this was sufficient for the Stirring's formulation, they would not be adding citric acid as a stand alone ingredient. The would add in more lime juice. But that is not practical as it will affect the taste and cost of the finished product. You can reduce the pH and meet safety requirements set forth by their Processing Authority to reach pH and time/temperature heat processing to make their drinks shelf stable. Additionally, once the Stirring's product is opened and not totally consumed in one setting, it is exposed to additional microbial challenges and will require refrigeration and pH control—which is provided by the

citric acid as a preservative effect. Some consumers may open the container and not drink all of it at once, consuming it days later. The pH control provided by the citric acid is a preservation effect." *See*, Declaration of Marc Meyers, dated July 20, 2025, at p. 2

With respect to Defendant's specific argument that " the pH of Stirrings – particularly if combined with heat treatment – is sufficient to preserve the product without the addition of citric acid, the citric acid added to the product cannot, by definition, be a "preservative" in Stirrings,[11]" Dr. Meyers states:

> "This is an untrue statement by the opposing Counsel. Citric Acid is a Preservative as well as other functions it provides such as tartness (acidity), chelation, etc. As mentioned above, it is being used by Stirring's as a pH modifier and acidulant which are key functions of a preservative such as citric acid. Stirring's should provide their formulation, batching and process records as well as show a test vs. control of their products made without citric acid and provide the pH and titratable acidity results. It would show that the added citric acid is (as they do state) a pH modifier, reducing the pH to a range for not only taste, but for food safety and to meet their Process Authority required pH and other conditions." *See*, Declaration of Marc Meyers, dated July 20, 2025, at p. 2-3.

Defendant also attempts to suggest that Dr. Meyers, in his Declaration in support of the Amended Complaint, has his references "backwards." However, it is clear that Defendant's counsel, who is attempting to offer scientific analysis to the Court without the assistance of an expert, is the one who has it "backwards."

Specifically, with respect to Defendant's argument that "a review of the references cited by Dr. Meyers reveals that Dr. Meyers has it backwards: his own sources demonstrate that citric

---

[11] Defendant's Memorandum in Support of Motion to Dismiss at p. 6.

acid imparts taste at concentrations far below the concentration required for a preservative effect,[12]" Dr. Meyers makes it plain that:

> "Opposing Counsel has many inaccuracies in their statement above. The references provided in my Declaration indicate that Citric acid can have a preservation effect at 0.03%. Another publication as stated shows that a person can first detect the sourness and acidity of citric acid at 0.04%. So it is correct as stated in my Declaration. The Defendant's attempt at math is incorrect. If you are reporting 0.4 grams in l liter of water that is 0.4 grams in 1000 grams of water which gives you 0.0004 parts per thousand. You have to move the decimal place over two spots to get this in parts per hundred—which would be 0.04 parts per hundred or 0.04 percent (0.04%). So, the Defendant's statements (as well as their math) are incorrect and citric acid can preserve a liquid and beverage below the minimum level that consumers can detect the taste of citric acid. So, citric acid remains a preservative in the Stirring's beverage products." *See*, Declaration of Marc Meyers, dated July 20, 2025, at p. 3-4.

b.     ***The Relevant Inquiry is Whether the Label is Deceptive to a Reasonable Consumer— Not Whether the Citric Acid Actually Did What Plaintiff Alleges***

It is equally important to note that the argument that an ingredient is not a "chemical preservative"[13] unless it actually functions as a preservative has already been expressly rejected by the Eastern District of New York.

In *Quiroz*, supra, the plaintiff challenged the defendant's labeling of the product as containing "No Preservatives" as misleading because the product contained citric acid. The defendant, on the other hand, argued that plaintiff failed to allege facts showing that citric acid "actually functions as a preservative" in the product. The complaint defined a "chemical

---

[12] Defendant's Memorandum in Support of Motion to Dismiss at p. 6-7.

[13] To reiterate, the FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

preservative" as "any chemical that, when added to food, tends to prevent or retard deterioration thereof . . ." (as does the Amended Complaint herein). Based on this definition, plaintiff countered that "it is not necessary that [citric acid] function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency." Defendant disagreed, arguing that "[u]nder Plaintiff's and the FDA's shared definition, an ingredient is not a `chemical preservative' unless it actually functions as a preservative."

The *Quiroz* court agreed with the plaintiff, holding that "the difference between 'chemical preservative' and 'natural preservative' is immaterial to plaintiff's claim because the label 'No Preservatives' on the Product is misleading if it contains preservatives, regardless of whether the preservative substance in the product is artificially added or naturally occurring." *Id.*

The *Quiroz* court also highlighted the fact that other courts considering similar claims likewise did not drawn a distinction. *See, e.g.*, Hu v. Herr Foods, No. 2:16-cv-05037 (E.D. Pa. Sept. 25, 2017) (denying motion to dismiss claims under NY GBL § 349 without differentiating between "chemical" and "natural" preservatives); *see also*, Silva v. Smucker National Foods, Inc., No. 14-CV-6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) (denying motion to dismiss and holding that whether the phosphoric acid in a particular product constitutes a preservative within the definition of 21 C.F.R. § 101.22(a)(5) is a "question of fact that cannot be decided as a matter of law"); *see also*, Kubilius v. Barilla America, Inc., No. 18 C 6656 (U.S.D.C, N.D. Illinois, Eastern Division) (joining the *Quiroz* court in rejecting the argument—for which defendant cited no legal authority—that plaintiff was required to plead facts indicating that citric acid "functions as a preservative" in defendant's product).

The Southern District of California reached a similar conclusion in <u>Hilsley v. Ocean Spray Cranberries, Inc.</u>, No. 17-cv-2335, 2018 WL 6245894 (S.D. Cal. Nov. 29, 2018). In *Hilsley*, Plaintiff challenged Defendant's labeling of the Product as containing "no artificial flavors" as misleading because the Product contained malic acid. It should be noted that malic acid is a common food ingredient that, in a very similar fashion as citric acid, is used for flavor and pH control.

Defendant unsuccessfully challenged predominance by arguing that the Plaintiff had not established that malic acid functioned as a flavor. In granting certification, Judge Gonzalo P. Curiel found that the relevant question was whether the label was deceptive to a reasonable consumer—not whether the chemical actually does what the plaintiff alleges.

*c.* **Plaintiff Nonetheless Plausibly Alleges That the Citric Acid in the Products Functions as a Preservative**

> *i. It Is A Scientific Fact That If Citric Acid is Imparting Taste, Then It Is Necessarily Present In Amounts High Enough To Have A Preservative Effect*

In an attempt to blur the well-recognized fact that citric acid is a preservative, food manufacturers have argued that the citric acid that they utilize only functions as a flavoring agent. One manufacturer even argued that its citric acid did not function as a preservative in its products because it did not intend for it to do so.[14]

However, as per Plaintiff's expert, Dr. Marc Meyers, while food manufacturers may employ citric acid for a variety of purposes, including flavoring, citric acid still functions as a

---

[14] *See*, <u>Mason v. Reed's Inc.</u>, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (finding plaintiff sufficiently alleged citric acid was a preservative where plaintiff included "detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages");

preservative in their products irrespective of these purposes.[15] In other words, a manufacturer's subjective intent for including citric acid in a product has no bearing on function, which is a matter of scientific fact, not human purposes. To put it plainly, subjective intentions cannot alter the laws of chemistry.

In fact, it is well settled that citric acid has dual effects physiologically which cannot be altered by one's subjective intent in using it:

> *"The citric acid listed in the ingredients of foods and supplements is manufactured — not what's naturally found in citrus fruits. This is because producing this additive from citrus fruits is too expensive and the demand far exceeds the supply . . . [b]ecause of its acidic, sour-tasting nature, citric acid is predominantly used as a flavoring AND preserving agent.[16] (emphasis added).*

As per Dr. Meyers, even if citric acid could be used as a flavoring agent in the Products, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Products because citric acid acts as a preservative even if very low levels are contained in the Products.[17]

The quantity of citric acid therefore needed to affect the flavor of the Product is more than sufficient to function as a preservative. Accordingly, even if Defendant's purported intent to

---

[15] Dr. Marc Meyers previously provided a Declaration in the *Mason* litigation, wherein he stated "[s]ome effects of citric acid, such as imparting changes to taste, *only take place if there is a sufficient quantity of acid in the product*. If the level of acid is too low, the acid will not change the taste or flavor of the product . . . [c]itric acid will act as a preservative-- **even at levels lower than  it's taste threshold**.  With a higher quantities of this acid, these effects will be more pronounced, *but they still occur when low levels of citric acid are present*.  Such effects include: delaying spoilage from bacteria, mold, fungi, and yeast; delaying changes in color, flavor, texture; and delaying browning and rancidity" (emphasis added). Id.

[16] https://www.healthline.com/nutrition/citric-acid#what-it-is.

[17] *See*, Meyers Decl., ¶¶ 9-10, 14-18.

use citric acid was for flavoring, this would have no bearing on the actual function of citric acid as a preservative.[18]

In short, Defendant cannot claim that a substance that has well-known dual effects, i.e., a flavoring agent and preservative, only acts as a flavoring agent because it's purported intent in using the chemical is solely to enhance flavor:

> "Citric acid can affect the taste of products. However, some effects of citric acid, such as imparting changes to taste, *only take place if there is a sufficient quantity of acid in the product.*
>
> If the level of acid is too low, the acid will not change the taste or flavor of the product.
>
> Notably, **citric acid acts as preservatives at levels *below* the threshold required for them to affect the taste of a food product**. Levels **as low as 0.03%** citric acid have been confirmed to have an effect on reducing the growth or stopping the growth of pathogenic microorganisms. In threshold sensory studies for citric acid, which tested down to levels ranging from 0.003% to 0.10%, participants could not detect sourness of citric acid (recognition threshold) **until 0.04% was reached. Notably, this is higher than the level where citric acid shows effects on pathogens at 0.03%.** The Defendant claims the Citric Acid is used for flavoring, **so it is assumed the use level is well above the 0.04% sensory taste threshold**. Therefore, above the preservative effect level in the above study.
>
> With a higher quantity of citric acid, this preservative effect will be more pronounced, but they still occur when low levels of acid are present.
>
> Accordingly, *if citric acid is impacting taste, then it is necessarily present in amounts high enough to be having a preservative effect.*
>
> In my experience, citric acid is often used to help with a product's flavor profile, which for these Products as on the label "For Flavor" would be characterized as providing "sourness" or "tanginess" or to accentuate the other fruit, citrus, etc. flavors of the cocktail mix.

---

[18] Id. ("Citric acid is effective at reducing spoilage organisms and pathogens at levels well below the usage rate of these preservatives in the Stirrings Cocktail Mixers Products. Levels as low as 0.03% citric acid were confirmed to have an effect on reducing growth or stopping growth of spoilage and pathogenic microorganisms. This is below the threshold (0.04%) for the sensory effect of only using enough Citric Acid 'For Flavor'").

However, the pH-lowering ability of citric acid also makes it function as an acidulant (and therefore, a preservative); and it controls the growth of microorganisms. An acidulant lowers the pH, and by definition, lowering the pH **is a method of preservation**. Therefore, the Products do contain a preservative and cannot meet the "No Preservatives" claim because citric acid is above the taste threshold, and therefore, is present in sufficient quantities to lower the pH; and have a preservation effect." (emphasis added).[19]

As such, based upon the expert opinion of a food scientist, rather than the subjective and unsupported opinion of counsel, it is clear that the amount of citric acid in the Products necessarily must be above the level where citric acid shows effects on pathogens, i.e., a preservative effect (0.03%), and likewise above the 0.04% sensory taste threshold. In other words, inasmuch as Defendant has conceded that the citric acid in the Products is used as a "flavoring agent," then the amount of citric acid that Defendant includes in its Products must be high enough to have a preservative effect.

### d.     *Plaintiff Sufficiently Alleges That The Labeling On The Products' Packaging Would Mislead A Reasonable Consumer*

The reasonable-consumer standard requires more than a mere possibility that a defendant's label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."[20]

On this point, the matter of <u>Kelly v. Beliv LLC</u>, 640 F. Supp. 3d 286 (S.D.N.Y. 2022) is instructive. In *Kelly*, the plaintiff alleged that defendant's juice-based beverage, which was

---

[19] Id.

[20] *See*, *e.g.*, <u>Ebner v. Fresh, Inc.</u>, 838 F.3d 958, 965 (9th Cir. 2016).

represented as containing "No Preservatives," was materially misleading because the product contained citric acid as an ingredient. With respect to the defendant's motion to dismiss, the Court held:

> "Plaintiff plausibly alleges that a reasonable consumer may be misled by Defendant's labeling of the Product with the phrase 'No Preservatives.' Contrary to Defendant's contention, the word 'preservative' does not appear only to refer to an ingredient that 'actually function[s]' in a specific product to preserve a given product. Dkt. No. 24 at 9. Instead, the term 'preservative' appears to have two possible meanings: First, it denotes an ingredient that actually functions to preserve a specific product. *Alternatively, and as relevant here, it may denote an ingredient that has the power or the tendency to preserve, regardless of whether it has a preserving function in a specific product.* Merriam-Webster defines 'preservative' as 'something that preserves or has the power of preserving.' Preservative, Merriam-Webster, https://www.merriam-webster.com/ (last visited Nov. 8, 2022) (emphasis added). The Oxford English Dictionary similarly defines 'preservative' as '[a] thing which preserves or tends to preserve.' Preservative, Oxford English Dictionary, https://www.oed.com/ (last visited Nov. 8, 2022) (emphasis added).
>
> The Complaint also references a regulation that defines preservative as 'any chemical that, when added to food, tends to prevent or retard deterioration,' Dkt. No. 8 ¶ 10 (quoting 21 C.F.R. § 101.22(a)(5)) (emphasis added), and 'tends' denotes that something is likely to behave in a certain way, not something that always does so, see Tend, Cambridge Dictionary, https://dictionary.cambridge.org/ (last visited Nov. 8, 2022) ('to be likely to behave in a particular way or have a particular characteristic.'); Tend, Macmillan Dictionary, https://www.macmillandictionary.com/ (last visited Nov. 8, 2022) ('to usually do a particular thing'). *In accordance with those definitions of 'preservative,' it is plausible that a reasonable consumer would understand a product label that says 'No Preservatives' to mean that the product did not contain any ingredients that would tend to prevent or retard deterioration regardless whether that was their primary or intended function with respect to the Product.*
>
> Plaintiff has also plausibly alleged that—despite its 'No Preservatives' labeling—the Product contains . . . ingredients that the FDA has identified as having the tendency or power to preserve. The Complaint alleges that the FDA warned a different company that its products were misbranded because 'they contain the chemical preservative[s] ascorbic acid and citric acid,' Id. ¶13, and that the FDA identifies ascorbic acid and citric acids as ingredients consumers 'should look for to determine if a food contains preservatives,' id. ¶ 11. In fact, Defendant does not appear to dispute that ascorbic acid and citric acid have

preserving functions in other products. See Dkt. No. 24 at 4. *The Court thus rejects Defendant's argument that the label is not misleading as matter of law merely because Plaintiff has not alleged that* ascorbic acid and *citric acids actually had preserving functions in the Product, as opposed to their other identified functions.* Fishon, 2020 WL 6564755, at \*7 ('Where a representation is capable of two possible reasonable interpretations, the misleading one should not be rejected simply because there is an alternative, non-misleading interpretation.'). (emphasis added).

This holding is consistent with Judge Koeltl's opinion in <u>Mason v. Reed's Inc.</u>, *supra*, which similarly involved claims under NYGBL §§ 349 and 350. Relying on the plaintiff's "detailed allegations, including that the FDA described citric acid as a preservative" and that "the FDA sent warning letters that suggested that citric acid was a preservative," the court found that the plaintiff in *Mason* plausibly stated that the "no preservatives" label was false and misleading. <u>Id</u>. at 143.

In reaching this decision, the court in *Mason* rejected the defendant's argument that citric acid, at least as used in the defendant's product, does not function as a preservative, noting that "[t]he defendant cites to an FDA warning letter that states that if citric acid is functioning as a preservative, the product must disclose that it contains preservatives. The defendant mistakenly infers that the inverse must also be true, namely that if a product contains citric acid not functioning as a preservative that it need not disclose that it contains preservatives. However, there is no basis to find that the safe harbor provisions would apply where citric acid, although a preservative, was being used only as a flavoring agent." <u>Id</u>. at 145.

Further, Judge Koeltl expressly considered the fact that citric acid could be used as "only as a flavor agent" and stated that this did not change his conclusion, noting that "whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer." <u>Id</u>.

Similarly, in <u>Squeo v. Campbell Soup Co.</u>, No. 24-cv-02235, 2024 WL 4557680, at *6 (N.D. Cal. Oct. 22, 2024), the Court addressed the issue of whether the citric acid included in defendant's potato chips functioned as a preservative, holding that:

> "Plaintiffs expressly allege that citric acid "acts as a preservative when added to food products," a conclusion which they base on, inter alia, statements issued by the United States Food and Drug Administration and Department of Agriculture and articles published in academic journals. See FAC ¶¶ 41-49. Thus, the Court may reasonably infer that the chips contained a preservative. Defendants counter that the mere presence of citric acid in the chips does not indicate that the citric acid actually functioned as a preservative or that Defendants added citric acid to the chips for the purpose of preserving them. See Motion at 9-10. But Plaintiffs squarely rebut this argument in the FAC; they expressly allege that citric acid "functions as a preservative in the [chips] regardless of whether Defendants intended to use citric acid as a preservative" and even "when present at low levels."
>
> Plaintiffs sufficiently allege that the citric acid in the chips functions as a preservative, thereby requiring consumers to read the package label as meaning precisely what it says—that the chips contain no artificial preservatives— which is eminently reasonable.
>
> In any event, whether citric acid actually functions as a preservative in the chips is a question of fact unsuitable for resolution at the pleading stage. See, <u>Orlander</u> e.g., Gitson v. Trader Joe's Co., No. 13-cv-01333-WHO, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014); Ivie v. Kraft Foods Glob., Inc., No. 12-cv-02554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013); Lozano v. Walmart, Inc., No. 23-cv-04500-SPG, 2024 WL 412606, at *9 (C.D. Cal. Feb. 1, 2024)."[21]

---

[21] *See also*, <u>Stewart v. Kodiak Cakes, LLC</u>, 537 F. Supp. 3d 1103, 1147-48 (S.D. Cal. Apr. 29, 2021) ("The Court finds that Plaintiffs plausibly plead that a reasonable consumer could be misled by advertising products as not containing artificial additives or preservatives where the products contain ingredients that Plaintiffs allege are additives or preservatives."); <u>Hayes v. Kraft Heinz Co.</u>, Case No. 1:23-cv-16596, United States District Court, N.D. Illinois, Eastern Division (November 13, 2024) (finding that plaintiffs adequately alleged that the citric acid in the products functions as preservatives in the products) ("Plaintiffs allege specifically that citric acid . . . function as preservatives in the Products. See, e.g., [17] ¶¶ 19, 22. Plaintiffs also cite to scholarly articles describing both Ingredients' role in preserving food, as well as FDA guidance that describes citric acid as a preservative. These allegations are enough to withstand a motion to dismiss. See, <u>Mason v. Reed's Inc.</u>, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) [finding plaintiff sufficiently alleged citric acid was a preservative where plaintiff included 'detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages']; <u>Simeone v. T. Marzetti Co.</u>, 2023 WL 2665444, at *6 [S.D.N.Y. Mar. 28, 2023] [denying motion to dismiss where the plaintiff alleged citric acid functions as a preservative])."

*e.* **Plaintiff Plausibly Alleges That On Account of a Materially Misleading Practice, She Purchased a Product and Did Not Receive the Full Value of Her Purchase**

In order to make out a claim under either NY GBL § 349 or § 350, a plaintiff must typically "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." Orlander v. Staples, Inc., 802 F.3d 289 (2d Cir. 2015). This may come in the form of an overpayment or "price premium," whereby a plaintiff pays more than she would have but for the deceptive practice. *See, e.g.*, Koenig v. Boulder Brands, Inc., 995 F.Supp.2d 274, 288-89 (S.D.N.Y. 2014).

In *Quiroz*, supra, Plaintiff alleged that she paid a price premium for the Product as a result of Defendant's misrepresentations. Specifically, she alleged that the Defendant "denied [her and the putative class] the full benefit of their bargains" when "she paid money for a Product that was represented to them as preservative-free, and then received a Product that contained preservatives and had significantly less value for them."

The court held that these allegations were sufficient to state a claim under the GBL. *Citing*, Orlander, 802 F.3d at 302 ("[T]here is no such rigid `price premium' doctrine under New York law. . . . [a] plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."); Silva, 2015 WL 5360022, at * 13 (finding the allegations that the plaintiff "paid a price premium for [the defendant's product] due to [the defendant's] misrepresentations" sufficient to state a claim under GBL section 349).

The court further held that the Plaintiff did not need to provide a comparison product in order to support her price premium theory (*citing*, Greene v. Gerber Prod. Co., 262 F.Supp.3d 38, 69 (E.D.N.Y. 2017)), rejecting the argument that the Plaintiff must point to a sufficiently

similar comparison product in order to adequately allege a price premium theory of injury. Specifically, the *Quiroz* court stated: "[c]ourts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss."

Here, the Plaintiff similarly alleges in her Amended Complaint that "Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that were—contrary to Defendant's representations—not free from preservatives. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for."[22] As such, Plaintiff's allegations are sufficient to state a claim under the GBL.

### f.    *Plaintiff States a Claim for Breach of Express Warranty*

To constitute an express warranty, two elements must be present: (1) There must be either an affirmation of fact or a promise by the seller relating to the subject of the sale, the natural tendency of which was to induce the purchaser to buy the goods: (2) the buyer must rely upon such statement or promise in making the purchase." <u>Ellen v. Heacock</u>, 247 A.D. 476, 477 (N.Y. App. Div. 1936).

Herein, Plaintiff alleges that the "No Preservatives" representations on the Products' labels constituted a description of the Products that was part of the basis of the bargain that induced Plaintiff to purchase the same and that the warranty was breached by the inclusion of a preservative, i.e., citric acid, in the Products.[23] This constitutes a breach of an express warranty

---

[22] *See, e.g.*, Am. Complaint ¶'s 7, 92 and 93.

[23] Specifically, Plaintiff alleges that she "purchased Defendant's Products because she saw the labeling, advertising, and website information, which represented that the products contained "No Preservatives." She relied on Defendant's false, misleading, and deceptive representations that the products contained "No Preservatives." Had she known the truth—that the representations she relied upon in making her purchases were false, misleading, and

under New York law.

Such an allegation has repeatedly survived on a motion to dismiss in a number of cases involving citric acid-containing products. For instance, in *Mason*, the Court held that:

> "In this case, the plaintiff alleges that the defendant's products contained several express statements, such as "All-Natural," "No Preservatives," and others. The defendant contends those statements are merely product descriptions, rather than warranties. However, the statements, as alleged by the plaintiff, have the natural tendency to induce the buyer to purchase the defendant's product. And the plaintiff alleges that she relied on the defendant's statements as part of the bargain. Pursuant to New York Law, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y.U.C.C. Law § 2-313(1)(b). As a result, product labels and advertisements can create express warranties. See, e.g., Atik v. Welch Foods, Inc., No. 15-cv-5405, 2016 WL 5678474, at *12-13 (E.D.N.Y. Sept. 30, 2016) ; In re Frito-Lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *27. Indeed, several courts in this Circuit have found that similar statements on product labels create actionable warranties. See, e.g., Ault, 2014 WL 1998235, at *6; Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d. 467, 482-83 (S.D.N.Y. 2014); In re Frito-Lay N. Am., Inc. All Natural Litig., 2013 WL 4647512, at *27.
>
> Therefore, the statements on the defendant's products can constitute an express warranty. Whether those warranties were breached is a question of fact that cannot be decided on a motion to dismiss. The plaintiff has pleaded enough to satisfy her burden to state a claim for breach of express warranty."

### g. *Plaintiff States a Claim for Unjust Enrichment*

Defendant seemingly argues that Plaintiff cannot plead unjust enrichment where there is a valid warranty. Defendant is trying to have it both ways: to deny that it warranted the Products as being preservative-free and at the same time to rely on those warranties to dismiss a claim for

---

deceptive—she would not have purchased the Products at a premium price . . . Plaintiff and the Class reasonably and detrimentally relied upon the representations by Defendant that the Products contain "No Preservatives." Plaintiff and the Class would not have purchased the Products had they known that the Products contain a synthetic preservative . . . Plaintiff and Class members reasonably relied on Defendant's representations that the Products are free of preservatives." *See, e.g.*, Am. Complaint ¶'s 15, 50 and 55.

unjust enrichment. The law does not allow such litigation aerobics.

"A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). "For this reason, courts routinely decline to dismiss unjust enrichment claims when pled in the alternative." Mono Advertising, LLC v. Vera Bradley Designs, Inc., 285 F. Supp. 3d 1087, 1091 (D. Minn. 2018) (citing cases); see also, In re Vizio, Inc. Consumer Privacy Litig., 238 F. Supp. 3d 1204, 1233-34 (C.D. Cal. 2017) (California causes of action); JTH Tax, Inc. v. Gouneh, 721 F. Supp. 2d 132, 139 (N.D.N.Y. 2010) (New York causes of action); Thornton v. Pinnacle Foods Group LLC, 2016 WL 4073713, at *4 (E.D. Mo. 2016) (Missouri causes of action).

The elements of a claim for unjust enrichment are that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 436 (S.D.N.Y. 2012) (quoting Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 2012 U.S. Dist. LEXIS 114606, at *62-63 (S.D.N.Y. Aug. 14, 2012). Plaintiff 's Amended Complaint pleads:

121.　As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of its Products, Defendant was enriched, at the expense of Plaintiff and the Class members, through the payment of the purchase price for Defendant's Products.

122.　Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiff and the Class members in light of the fact that the Products purchased by Plaintiff and the Class members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class members for the monies paid to Defendant for the Products.

The elements of the cause of action, therefore, are properly pleaded, which Defendant does not dispute.

Instead, Defendant seemingly argues that the claim for unjust enrichment must be dismissed because Plaintiff acknowledges the existence of a valid contract, in the form of the

warranty provided for the Products. The rule in New York, however, is that if "the parties dispute the existence of a contract," then the plaintiff is entitled to pursue unjust enrichment claims in the alternative to the contract-based claim. Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 216 (S.D.N.Y. 2013); *see also, e.g.*, JTH Tax, Inc., at 139 (N.D.N.Y. 2010); Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 195-96 (S.D.N.Y. 2009); *see also*, Pramer, S.C.A. v. Abaplus Int'l Corp., 76 A.D.3d 89, 100 (N.Y. App. Div. 2010); Niagara Mohawk Power Corp. v. Freed, 265 A.D.2d 938, 939 (N.Y. App. Div. 1999) (holding that an unjust enrichment claim is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud).

Until the warranty issue is resolved, Plaintiff is entitled to proceed on her claim for unjust enrichment as well. *See, e.g.*, Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) ("At this stage of the proceedings, Plaintiffs' unjust enrichment claim cannot be dismissed on what is basically a factual issue.").[24]

For instance, in Mason v. Reed's Inc., *supra*, the defendant argued that the plaintiff's unjust enrichment claim should have been dismissed because it was duplicative of other claims and not pleaded with sufficient particularity. The Court held that:

> "A claim for unjust enrichment requires a showing "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006). A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (N.Y. 2012). In this case, the

---

[24] If Defendant is prepared to stipulate that its preservative-free assurances create an express warranty on the Products, Plaintiff will voluntarily dismiss her claim for unjust enrichment. Absent such a stipulation, the claim must proceed.

plaintiff has alleged that the defendant benefited at the plaintiff's expense. The plaintiff purchased the defendant's product. The plaintiff also has alleged that equity and good conscience require restitution because the defendant's profit was due to allegedly untrue or misleading statements. The defendant contends that an unjust enrichment action would be duplicative of the breach of warranty and Section 349 and 350 claims. However, even if the plaintiff were unable to recover for the distinct theories of liability, Federal Rule of Civil Procedure 8(d)(3) permits a party to state "as many separate claims or defenses as it has, regardless of consistency." *Fed. R. Civ. P. 8(d)(3)*. Moreover, the Court of Appeals for the Second Circuit recently noted that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim[.]" Axon, 813 F. App'x at 706. Therefore, the plaintiff has pleaded adequately her unjust enrichment claim, and whether she can recover will turn on issues of fact that cannot be determined on the motion to dismiss. Accordingly, "[a]t this stage of the proceedings, [the plaintiff's] unjust enrichment claim cannot be dismissed on what is basically a factual issue." Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) (denying motion to dismiss unjust enrichment claim pleaded in the alternative to a breach of warranty claim)."[25]

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Dated: Bronx, New York
      July 24, 2025

Respectfully submitted,
GABRIELLI LEVITT LLP

By: _____
Michael J. Gabrielli (MG-2421)
2426 Eastchester Road, Suite 201
Bronx, New York 10469
Tel.: (718) 708-5322

*Counsel for Plaintiff & the Proposed Class*

---

[25] *See also*, Scholder v. Sioux Honey Association Cooperative, No. CV 16-5369 (GRB) (E.D.N.Y. 2022) (denying defendant's motion to dismiss plaintiff's unjust enrichment claim pleaded in the alternative to other theories of liability).